## S96A1116. SMITH v. THE STATE.
## S96A1310. GREENE v. THE STATE.
(477 SE2d 827)

HINES, Justice.

Co-defendants Marquis M. Smith and Marcel D. Greene engaged in a gunfight on a public street, resulting in the fatal shooting of 13-year-old bystander James Johnson. A jury found them guilty of felony murder while in the commission of aggravated assault, aggravated assault, involuntary manslaughter, possession of a firearm during the commission of a crime, discharge of a gun near a public highway and street, and reckless conduct in connection with the killing. Smith was also found guilty of additional charges of carrying a concealed weapon and possession of a pistol by a person under the age of 18.[1] We affirm in part and reverse in part the convictions of both men.

The evidence, viewed in favor of the verdicts, established that there was hostility between Smith and Greene because of territorial rivalry, and that on April 20, 1995, Smith had a verbal confrontation with Greene or his friends while Smith was in Greene's neighborhood. That evening, Greene and his friends drove to Smith's side of town. As Greene drove by Smith, who was standing near a public thoroughfare where numerous people including young children were gathered, Smith pointed the revolver he was carrying at the vehicle. Greene exited the car wielding a semiautomatic weapon. Witness testimony was inconsistent as to who fired first, but it was established

---

[1] The crimes were committed on April 20, 1995. On May 12, 1995, Smith and Greene were indicted for malice murder, felony murder during the commission of aggravated assault, aggravated assault (each against the other), involuntary manslaughter, possession of a firearm during the commission of a crime, discharge of a gun near a public highway and street, and reckless conduct. Smith was additionally indicted for carrying a concealed weapon and possession of a pistol by a person under the age of 18. Smith and Greene were tried jointly on September 13-15, 1995, and the jury acquitted them of malice murder, but found them guilty of the remaining charges. On September 15, 1995, they were each sentenced to life imprisonment for felony murder, five consecutive years of incarceration for possession of a firearm during the commission of a crime, and twelve months of incarceration each for discharge of a gun near a public highway and street and reckless conduct. The convictions for involuntary manslaughter and aggravated assault stood vacated by operation of law, OCGA § 16-1-7. Smith was additionally sentenced to 12 months of incarceration each for carrying a concealed weapon and possession of a pistol by a person under the age of 18.

Smith filed a motion for new trial on October 10, 1995, and it was denied on February 23, 1996. He filed a notice of appeal on March 19, 1996, and the appeal was docketed in this Court on April 8, 1996. The case was submitted for decision without oral argument on June 3, 1996.

Greene filed a motion for new trial on September 28, 1995, which was amended on February 21, 1996, and denied on March 29, 1996. He filed a notice of appeal on April 17, 1996, and the appeal was docketed in this Court on May 6, 1996. The case was submitted for decision without oral argument on July 1, 1996.

that Smith fired two to four shots and that Greene fired fourteen rounds. The child victim was standing approximately 30 feet from Smith when he was shot through the brain.

Smith and Greene were tried together and each claimed that he fired in self-defense.

1. The evidence was sufficient to enable a rational trier of fact to find Smith and Greene guilty beyond a reasonable doubt of all charges for which they were prosecuted and found guilty. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Both Smith and Greene challenge the trial court's refusal to sever their trials.

Greene filed a motion for severance, but Smith did not. Nor did Smith join in Greene's petition or at any time before or during trial request to proceed separately. Thus, Smith may not now raise the issue of severance for the first time. *Way v. State*, 239 Ga. 316 (2) (236 SE2d 655) (1977).

Greene contends that severance was required because their defenses were antagonistic and because the evidence created confusion in the minds of the jurors in that the fact that an innocent third party was killed as the result of a shoot-out misled the jury to find that both defendants were responsible. He further argues that because each co-defendant was charged with assault against the other, the State could not prosecute him on some charges and present him as a victim on another charge at the same time.

In a case where the death penalty is not sought, the severance of defendants is a matter in the trial court's discretion which will not be disturbed unless there is an abuse of that discretion. OCGA § 17-8-4. The defendant requesting severance has the burden of doing more than raising the possibility that a separate trial would give him a better chance of acquittal. He must demonstrate a clear showing of prejudice and a consequent denial of due process in the absence of severance. *Dennard v. State*, 263 Ga. 453, 455 (5) (435 SE2d 26) (1993). Greene fails to do this.

It is true that in exercising its discretion, the trial court is to consider, among other factors, the possibility of confusion of the evidence and law applicable to each defendant and whether or not the defenses are antagonistic. *Jackson v. State*, 266 Ga. 308, 309 (2) (467 SE2d 495) (1996); *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975). Here, the law applicable to each defendant was substantially the same, and there is no showing that presentation of evidence regarding both defendants led to confusion in the minds of the jury. Indeed, because of the circumstances of this case, it is difficult to foresee how the presentation of evidence against Greene would have significantly differed in his separate prosecution. Nor does Greene state how his individual prosecution would have proceeded differ-

ently, much less more favorably. The fact that Greene's defense was antagonistic to Smith's was not, in and of itself, sufficient to warrant a separate trial. *Cain,* supra at 129. Nor is there a bar to prosecuting co-defendants when one claims to be the victim of the other. See *Williams v. State,* 213 Ga. App. 458 (444 SE2d 831) (1994).

3. Before trial, Greene moved to introduce evidence of Smith's violent reputation and specific acts in support of Greene's claims of self-defense and reasonable fear, pursuant to *Chandler v. State,* 261 Ga. 402 (405 SE2d 669) (1991). The trial court initially ruled that specific acts could not be introduced because Greene failed to provide notice of such acts. However, because Greene raised the issue of self-defense, the court permitted Greene to introduce his own and witness testimony of Smith's violent reputation in the community, and the court instructed the jury that it was to limit consideration of the testimony to the issue of whether or not Greene acted in self-defense.

Smith contends that the introduction of the evidence impermissibly placed his character in issue in violation of OCGA §§ 24-2-2 and 24-9-20. However, "[e]vidence of a victim's violent character and general reputation for violence may be admitted upon 'a prima facie showing that the victim was the aggressor; that the victim assaulted defendant; and that defendant was honestly seeking to defend himself.' [Cit.]" *Hill v. State,* 259 Ga. 655, 657 (4) (386 SE2d 133) (1989).[2] Here, Greene arguably made a showing that Smith acted as an aggressor against him. Whether or not the evidence made a prima facie showing that by his conduct Greene was honestly seeking to defend himself rather than to act himself as an aggressor did not render the evidence inadmissible under the particular circumstances of this case. That is, whether or not Greene's actions constituted an effort at self-defense or aggression toward Smith was for the jury to determine. Moreover, the court carefully limited the jury's consideration of the character evidence, and qualified jurors under oath are presumed to follow the trial court's instructions. *Dennis v. State,* 263 Ga. 257, 258 (2) (430 SE2d 742) (1993), citing *Harris v. State,* 202 Ga. App. 618, 620 (414 SE2d 919) (1992). Finally, Smith had ample opportunity for cross-examination or to offer contradictory evidence. A late claim by Smith that severance would have alleviated any problem with introduction of the testimony is unavailing. See Division 2, supra.

4. Smith claims that the trial court erred in including in its instruction on justification language regarding mutual combat because he maintains there was no evidence of a mutual desire and

---

[2] The case was overruled to the extent that it conflicted with the holding in *Edge v. State,* 261 Ga. 865 (2) (414 SE2d 463) (1992).

agreement to fight. He further complains that the instruction was incomplete and confusing because the court failed to define mutual combat and make it clear to the jury that merely fighting to repel an unprovoked attack is not mutual combat.

The language at issue is from the standard charge on justification found in Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, part 3, § AA (2nd ed. 1991), which tracks the subsections of the justification statute.[3] In general, it is not cause for a new trial when an entire Code section is given even though a portion of the charge may not be applicable under the evidence. *Lee v. State*, 265 Ga. 112, 113 (3) (454 SE2d 761) (1995). What is more, in this case, the jury could infer from the conduct of the parties a mutual intention to fight sufficient to support a charge of mutual combat. *Sinkfield v. State*, 266 Ga. 726, 727 (2) ( 470 SE2d 649) (1996). Moreover, Smith cannot be heard to complain that the trial court failed to elaborate on the concept of mutual combat when he himself actively petitioned the court at the charge conference to refrain from giving its proposed detailed charge on the subject. It is well settled that a party cannot challenge on appeal an action that his own conduct aided in causing. *Ellerbee v. State*, 215 Ga. App. 312, 313 (2) (450 SE2d 443) (1994).

5. Smith contends that his felony murder conviction must be reversed because he did not commit any felony that directly caused the victim's death as required by OCGA § 16-5-1 inasmuch as Greene fired the bullet which struck the victim. On the contrary, the death was directly caused by the gunfight, in which the jury was authorized to find Smith was a willing participant. See *Cost v. State*, 263 Ga. 720 (1) (438 SE2d 79) (1994); *Bedford v. State*, 263 Ga. 121, 122 (3) (429 SE2d 87) (1993); *Scott v. State*, 252 Ga. 251 (1) ( 313 SE2d 87) (1984). Compare *Hill v. State*, 250 Ga. 277 (295 SE2d 518) (1982) and *State v.*

---

[3] OCGA § 16-3-21 provides:

(a) A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to defend himself or a third person against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person or to prevent the commission of a forcible felony.

(b) A person is not justified in using force under the circumstances specified in subsection (a) of this Code section if he:

(1) Initially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant;

(2) Is attempting to commit, committing, or fleeing after the commission or attempted commission of a felony; or

(3) Was the aggressor or was engaged in a combat by agreement unless he withdraws from the encounter and effectively communicates to such other person his intent to do so and the other, notwithstanding, continues or threatens to continue the use of unlawful force.

*Crane*, 247 Ga. 779 (279 SE2d 695) (1981) in which the homicides were not committed by either the defendant or someone acting in concert with him.'

6. Smith contends that his convictions must be reversed because the verdicts of guilty of felony murder and involuntary manslaughter are mutually exclusive in that they require a finding that the discharge of his gun which caused the victim's death was both a felony and an unlawful act other than a felony. The contention fails. It is not necessary that there be consistency in the verdict, and every count in an indictment is regarded as if it were a separate indictment. *Lawrence v. State*, 265 Ga. 65, 67 (2) (453 SE2d 733) (1995). Felony murder and involuntary manslaughter are not mutually exclusive as a matter of law. Compare *Thomas v. State*, 261 Ga. 854 (413 SE2d 196) (1992). Nor are they as a matter of fact here. When Smith fired his gun at Greene, he committed the felony of aggravated assault against Greene which would support the felony murder. However, the jury could also conclude that he acted recklessly toward James Johnson, and therefore, was guilty of involuntary manslaughter as well.

7. Smith also fails in his claim that the verdict for involuntary manslaughter cannot be sustained because the evidence showed that any reckless firing of his gun did not proximately cause the homicide as it was Greene's bullet that struck the victim. See Divisions 5 and 6, supra.

8. Smith further contends that inasmuch as he committed only one act, i.e., discharge of the gun, which resulted in his being found guilty of both felony murder and involuntary manslaughter, *Mitchell v. State*, 266 Ga. 197 (467 SE2d 503) (1996) and *Edge v. State*, 261 Ga. 865 (2) (414 SE2d 463) (1992) require that his conviction for felony murder be vacated and that he be sentenced only for involuntary manslaughter. Such contention is without merit. Even attempting to apply the rationale of *Mitchell* and *Edge* to this situation of involuntary manslaughter, verdicts on both charges were proper here. Although there was but one homicide, the felony murder and involuntary manslaughter were premised on separate acts leading to the death. See Division 6, supra.

9. Smith contends that he was illegally convicted and sentenced for the charges of aggravated assault, reckless conduct, and discharge of a gun near a public highway and street because he could not be convicted and sentenced for the underlying felony and misdemeanors upon which the felony murder and involuntary manslaughter were based.

It is plain that a defendant may be prosecuted and found guilty of underlying felonies and misdemeanors. Indeed, such prosecutions and determinations of guilt are required for convictions of the greater

offenses charged. The bar is to being punished multiple times for the same act. See OCGA § 16-1-7. Smith is correct that he could not be sentenced for both the felony murder and the aggravated assault on which it was premised, but he has no basis for complaint in this regard because he was not sentenced for the aggravated assault as the court recognized that it was vacated by operation of law. See footnote 1.

Smith was, however, sentenced for reckless conduct and discharge of a gun near a public highway and street, which were the charges underlying the indictment for involuntary manslaughter. The trial court correctly treated the involuntary manslaughter count as statutorily vacated in light of the conviction for felony murder, for there was but one homicide. See footnote 1. Because there was no involuntary manslaughter into which the underlying charges could merge, the analysis must proceed to determine whether the underlying charges of reckless conduct and discharge of a gun can stand on their own as a matter of fact or whether they are subsumed by the valid felony murder conviction. See the analysis in *Malcolm v. State*, 263 Ga. 369, 371 (4) (434 SE2d 479) (1993).

Here, there was no evidence of Smith's reckless conduct or discharge of his gun other than that directly related to the death of James Johnson. Thus, Smith's convictions and sentences for reckless conduct and discharge of a gun near a public highway and street must be set aside. Id.[4]

10. Greene's convictions and sentences for reckless conduct and discharge of a gun near a public highway and street must be set aside for the reasons stated in Division 9.[5]

11. Greene was not denied effective assistance of counsel under the standard of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).[6]

---

[4] The evidence that Smith possessed the concealed revolver immediately before the victim was shot authorizes as a matter of fact separate convictions and sentences for the weapon possession and concealment charges.

[5] In regard to the possession of firearm charge against Greene, the evidence was that Greene possessed the semiautomatic weapon immediately before and after the shooting.

[6] Greene raised the issue in his amended motion for new trial, claiming that his trial counsel was ineffective for (1) failing to call a witness who allegedly saw James Johnson with a gun prior to being shot; (2) failing to call a ballistics expert; (3) failing to present an autopsy report; (4) failing to request the court to awaken sleeping jurors; and (5) failing to respond to Greene's requests that counsel correct the cited problems.

A transcript of the hearing in the matter has not been provided for the appeal. However, Greene acknowledges that trial counsel testified that he did not call the witness because the witness changed her story prior to trial, and it made no difference whether or not the victim had a gun because there was no evidence that the victim threatened or assaulted anyone prior to the shooting; there were not enough bullet fragments to warrant the use of a ballistics expert, and such testimony was not necessary given that Greene's defense was justification or self-defense; and that he did not see any jurors sleeping during the trial. In ruling on

12. Greene's untimely supplemental enumerations of error filed pro se on October 8, 1996, are not separately considered.[7] See *Wallace v. State*, 216 Ga. App. 718, 721 (6) (455 SE2d 615) (1995). A party does not have the hybrid right, under either the State or Federal Constitution, to simultaneously represent himself and be represented by counsel. *Cargill v. State*, 255 Ga. 616, 622 (3) (340 SE2d 891) (1986).

*Judgments affirmed in part and reversed in part. All the Justices concur.*

DECIDED NOVEMBER 12, 1996 —
RECONSIDERATION DENIED DECEMBER 6, 1996.

*George L. Kimel, Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer,* for appellant (case no. S96A1116).

*Gale & Henley, Teddy L. Henley,* for appellant (case no. S96A1310).

*Stephen F. Lanier, District Attorney, C. Stephen Cox, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.

---

the motion, the court stated that it did not notice any jurors sleeping and no such activity was reported during the trial. Additionally, it appears that Greene did not inform trial counsel of the alleged sleeping jurors until after the trial ended. Greene fails to show any harm from the lack of an autopsy report inasmuch as it was undisputed that the cause of the victim's death was a gunshot wound to the head.

[7] Most of the claims of ineffectiveness are duplicative of what has been raised by counsel in the appeal. The remaining claims are unsupported by any showing that the conduct constituted a deficiency in the representation or resulted in any harm to Greene.