A99A0100, A99A0244. ELROD v. THE STATE (two cases).
(517 SE2d 805)

RUFFIN, Judge.

Following a jury trial, Matthew Shane Elrod was convicted of aggravated assault and possession of a firearm during the commis-

sion of a crime.[1] Elrod contends his trial counsel was ineffective, the evidence was insufficient to support the verdicts, and the trial court erred in giving or refusing to give certain jury charges. Because the trial court gave an erroneous and harmful recharge, we reverse.

Viewed in the light most favorable to support the verdicts, the evidence reveals that during the afternoon of September 24, 1996, Walker County Sheriff's deputies responded to a domestic violence 911 call involving Matthew Shane Elrod and his stepfather, Richard Scott. Several of Elrod's neighbors and their children witnessed the incident, gave statements, and testified at trial. Elrod, who had been drinking, arrived at his mother's home in the Round Pond Trailer Park, saw his clothes airing on the clothesline, and accused his mother of selling his personal belongings. Elrod and his mother got into a heated argument. Scott initially told the deputies that when he attempted to break up the fight, Elrod struck him on the back with a broom handle. Scott wrestled the broom away from Elrod and attempted to subdue him with a head lock, but Elrod broke free and pulled a handgun from his pocket and pointed it at Scott's face. Scott managed to push Elrod's hand away before Elrod pulled the trigger. Scott ran to his truck and drove away. Elrod followed him on foot, firing several shots at the back of the departing truck. Elrod then got into a car and drove away.

A neighbor testified she heard Elrod yelling as he ran after Scott: "I'll kill you you . . . SOB." She also heard Elrod's mother shouting: "Shane, quit, quit." And, when Elrod's mother noticed the neighbors were watching, this same witness heard her say: "Keep your noses out of my business." Scott, who denied at trial that Elrod fired at him, was impeached with the prior inconsistent statements he gave police when he was interviewed immediately following his 911 call for help. Elrod's mother admitted that Elrod had a gun, but that it was a toy cap gun. Elrod testified that he did not shoot at Scott, that he had no gun during the incident, and that he and Scott had simply been wrestling. A deputy noticed several scratches on the back of Scott's dump truck but apparently could not determine whether any of them were made by bullets. No gun, bullets, or shell casings were introduced into evidence.

1. On appeal, this Court determines evidence sufficiency. We do not weigh the evidence or determine witness credibility. *Davis v. State*, 225 Ga. App. 627 (1) (484 SE2d 655) (1997). The evidence is sufficient as a matter of law if, when viewed in the light most favorable to the verdict, a rational trier of fact could find all the essential

---

[1] Pursuant to the trial court's order granting him an out-of-time appeal, Elrod appealed both to this Court and to the Supreme Court of Georgia, which transferred its case here. Because the appeals are identical, we consolidate them.

elements of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The offense of aggravated assault consists of two essential elements: (1) an assault and (2) aggravation by use of "a deadly weapon or . . . any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). Elrod does not deny that he assaulted Scott; rather, he argues there was insufficient evidence that he fired a handgun because none of the witnesses who testified got close enough to actually see the gun. Scott, of course, got close enough to see the gun, and his prior inconsistent statement on that point was admissible as substantive evidence. *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982). Moreover, given the testimony of the many witnesses who either heard the gunshots or saw Elrod firing what looked like a handgun at Scott and his truck, the jury was authorized to infer that Elrod assaulted Scott by firing a handgun at him. OCGA § 24-4-9; see *Johnson v. State*, 148 Ga. App. 702, 703 (1) (252 SE2d 205) (1979). Thus, the evidence in this case was sufficient to support Elrod's convictions for aggravated assault and possession of a firearm during the commission of a crime beyond a reasonable doubt. See *Jackson v. Virginia*, supra.

2. Elrod argues that the trial court erred in recharging the jury on aggravated assault in response to a question posed by the jury. Elrod's attorney preserved the right to object to the recharge by reserving exceptions to it. The jury asked whether they could find Elrod guilty of aggravated assault if the gun was not discharged even though the indictment alleged that Elrod committed the aggravated assault "by shooting said firearm at Richard Scott and the vehicle he was driving." One of the jurors elaborated as follows: "At the bottom of the indictment it read[s] aggravated assault, but then it continues on to give the specifics of what the assault was, and that's where we have the problem. Is finding him guilty of the aggravated assault the same as agreeing to those specifics?" The court told the jury it could not answer questions about the facts, but only about the law. The jury then asked to hear the law of aggravated assault again. The court gave the jury a recharge on aggravated assault that included this statement: "If the pointing of a firearm places the victim in reasonable apprehension of receiving an immediate violent injury, the crime of aggravated assault has occurred. It makes no difference if the weapon was loaded or could, in fact, be fired." The recharge was not followed by a limiting instruction that informed the jury they were authorized to find Elrod guilty only if they found he committed the aggravated assault in the way and manner alleged in the indictment.

Although it is not error to limit a recharge to the question asked,

*Davis v. State*, 209 Ga. App. 755, 760 (5) (434 SE2d 752) (1993), it is error to give a charge stating that an offense may be committed in more than one manner when (1) only one manner is alleged in the indictment, and (2) facts in evidence raise a reasonable probability that the jury may have convicted the defendant of committing the offense in a manner not charged in the indictment. See *Hunley v. State*, 227 Ga. App. 234, 235 (1) (488 SE2d 716) (1997); *Levin v. State*, 222 Ga. App. 123, 126-127 (6) (473 SE2d 582) (1996); *Walker v. State*, 146 Ga. App. 237, 244 (2) (246 SE2d 206) (1978).

In this case, Elrod was charged with committing an aggravated assault by "shooting," and not by "pointing," a handgun. As we have explained, "no averment in an indictment can be rejected as surplusage which is descriptive either of the offense or of the manner in which it was committed. All such averments must be proved as laid, or the failure to prove the same as laid will amount to a variance." (Punctuation omitted.) *Walker*, supra at 242 (1). Given the way the indictment was drafted, the jury was required to find beyond a reasonable doubt that Elrod shot a handgun at Scott in order to find him guilty of aggravated assault. Id.; see also *Griffin v. State*, 214 Ga. App. 813, 815 (2) (449 SE2d 341) (1994). The jurors' questions reveal they were particularly interested in whether they could find Elrod guilty of aggravated assault if they found he simply pointed the gun at Scott. Given the State's lack of physical evidence that a gun was actually fired, the jury may have believed the State failed to carry its burden of proof in that regard yet nevertheless believed Elrod committed an aggravated assault by pointing a handgun at Scott. Therefore, a reasonable probability exists that the jury may have convicted Elrod of committing the offense in a manner not charged in the indictment. See *Levin*, supra at 127 (6). The court's recharge informed the jury that an aggravated assault could be committed in a way not set forth in the indictment, and it contained no remedial instruction limiting the jury's consideration to the facts alleged in the indictment. Id.; compare *Griffin v. State*, supra at 815-816 (2) (no remedial instruction given) and *Lumpkin v. State*, 249 Ga. 834, 836 (2) (295 SE2d 86) (1982) (remedial instruction given). Further, we cannot say the recharge, when considered with the original charge and taken as a whole, fairly instructed the jury. Cf. *Martin v. State*, 268 Ga. 682, 685-686 (8) (492 SE2d 225) (1997). In this case, the jury's confusion was revealed in a specific question after the original charge was read. The trial court did not remedy that confusion with its recharge; rather, it misled the jury by giving a recharge that in essence answered its question in the affirmative. Under these circumstances, it is probable that Elrod was deprived of his substantial right to be tried only on charges presented in the indictment. *Levin*, supra; *Walker*, supra at 244 (2). Consequently, the conviction for

aggravated assault as well as the conviction predicated upon it, possession of a firearm during the commission of the crime of aggravated assault, must be reversed. *Levin*, supra.

3. Elrod's remaining enumerations of error are rendered moot by this ruling.

*Judgment reversed. McMurray, P. J., and Smith, J., concur. Andrews, J., disqualified.*

DECIDED MAY 13, 1999.

*Amy A. Petulla*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Christopher A. Arnt, Assistant District Attorney*, for appellee.