## A99A1897. REESE v. THE STATE.
(526 SE2d 867)

JOHNSON, Chief Judge.

A jury found Leonard Reese guilty of armed robbery, kidnapping, burglary, aggravated assault, false imprisonment, possession of a firearm during the commission of a crime, sexual battery, and two counts of making terroristic threats. He was found not guilty of theft by taking. Reese appeals from the judgments of conviction entered on the verdicts and the denial of his motion for new trial. Because each of his six enumerations of error is without merit, we affirm.

1. Reese challenges the sufficiency of the evidence to support the convictions, contending the victim was not credible and her testimony was "inconsistent and weak."

On appeal, this court does not weigh the evidence or determine witness credibility. We determine if the evidence is sufficient by deciding whether, viewing the evidence in a light most favorable to the verdict, a rational trier of fact could find all the essential elements of the crimes charged beyond a reasonable doubt.[1]

So viewed, the evidence shows that the victim was alone in her boyfriend's apartment when someone knocked on the door. She looked out and saw someone whom she thought she recognized. As the victim opened the door, she saw the muzzle of a gun and tried to shut the door. Three men, none of whom she knew, forced the door open, knocking her to the floor. All three men had guns.

Reese was the first man to enter the apartment. The second man, later identified as co-defendant Cobey Lindsey, directed Reese to stay with the victim as he and the third man ransacked the apartment. Reese stayed with and pointed a gun at the victim, telling her he would kill her if she screamed. He took her into another room of the apartment. The men demanded money and drugs. The victim said she had no money or drugs, but gave Lindsey the jewelry she was wearing. The men took jewelry and change from a desk.

Reese took the victim to another room where Lindsey told her to take off her clothes. Lindsey struck her on the head with his gun as Reese blocked the doorway. At Lindsey's request, Reese took the victim to another room. Lindsey told the victim he was going to rape and then kill her. As Reese stood in the doorway watching, Lindsey

---

[1] *Elrod v. State*, 238 Ga. App. 80, 81-82 (1) (517 SE2d 805) (1999).

pushed the muzzle of the gun into the victim's vagina and again said he was going to rape her. Reese threw a jacket over the victim's face. Lindsey went to another room and called for Reese to bring the victim in there. Reese complied. The men again asked the victim for money and drugs. Lindsey tied her ankles and wrists with electrical cords and threatened to kill her if she moved.

The victim positively identified Reese in a photographic lineup as one of the three assailants. She also positively identified him in court, stating that she was "one hundred percent" certain of her identification. The evidence was sufficient for a rational trier of fact to find Reese guilty beyond a reasonable doubt.[2] We note that even if, as Reese contends, the victim made inconsistent statements about what happened, the question of her credibility was for the jury to decide.[3]

2. Reese, an African-American, contends the trial court erred in denying his challenge to the array from which the jury was selected. He challenged the array because no African-American males and only four African-American females were on the list of forty-eight potential jurors.

At trial, Reese presented no evidence in support of his challenge. Defense counsel admitted that he did not know how jurors were selected in Douglas County and that he knew of no process by which the county systematically excluded African-Americans. Having failed to establish any flaw in the method by which the county creates its venire, Reese has not carried his burden of showing purposeful discrimination.[4] The trial court did not err in denying his challenge to the array of the jury.[5]

3. Reese asserts that the trial court erred in allowing written jury instructions to go out with the jury. He complains that, because the trial court informed the jurors before reading the instructions to them that they would receive a printout of the instructions, they may not have listened carefully when the trial court gave the instructions orally. He also argues that having the written instructions may have caused the jurors to debate the meanings of the written terms, become confused, and conduct legal research while deliberating.

We will not presume that the jurors did not listen carefully or that they acted improperly absent evidence of such in the record. And we fail to see how the jury would be confused by having a transcript

[2] See generally *Kinney v. State*, 234 Ga. App. 733, 734-735 (1) (506 SE2d 441) (1998).
[3] See *Havron v. State*, 234 Ga. App. 413, 414 (1) (506 SE2d 421) (1998).
[4] See *Hansley v. State*, 267 Ga. 48, 49 (2) (472 SE2d 305) (1996); *Jewell v. State*, 261 Ga. 861, 862-863 (3) (413 SE2d 201) (1992); *Lane v. State*, 239 Ga. App. 230, 231 (2) (b) (520 SE2d 705) (1999); compare *Barrow v. State*, 239 Ga. 162, 166 (2) (a), (b) (236 SE2d 257) (1977).
[5] See *Chisholm v. State*, 231 Ga. App. 835, 839 (3) (500 SE2d 14) (1998), overruled on other grounds, *Murphy v. State*, 270 Ga. 72, 74 (2) (c) (508 SE2d 399) (1998).

of the instructions the court gave orally. Indeed, the contrary is more likely.

> It is frequently desirable that instructions which have been reduced to writing be not only read to the jury but also be handed over to the jury. . . . We see no good reason why the members of the jury should always be required to debate and rely upon their several recollections of what a judge said when proof of what he said is readily available.[6]

This case involved some ten criminal charges. We believe the trial court's decision to give the jury a printout of the oral instructions could only have been beneficial here.[7] This enumeration is without merit.

4. Reese argues that the trial court erred in allowing Lindsey to be present in the courtroom on two occasions during the trial. He says the jury saw Lindsey, who was wearing shackles and prison clothing, on the witness stand after a recess and later standing near Reese in the courtroom. Reese says he was prejudiced by Lindsey's presence because the jury might have associated Reese with his guilty co-defendant. He also says he was denied his right to confront Lindsey as a witness against him.

The record shows that the state called Lindsey to the stand, outside of the presence of the jury, to ascertain whether he would testify on the state's behalf. Lindsey had already been convicted for his participation in the home invasion. Once on the stand, and while the jury was still out of the courtroom, Lindsey asserted his privilege against self-incrimination and refused to testify. Before Lindsey was excused, the court called the jury back into the courtroom, informed them that it was tending to some legal business, and then excused them for the day. Defense counsel voiced no objection to the jury entering the courtroom while Lindsey was present.

The next day, after the trial court ruled that Lindsey would not be compelled to testify, the state announced that it intended to bring Lindsey back into the courtroom so that the victim could identify him in front of the jury. Defense counsel's only objection to the proposed procedure was that the victim had already testified and it would be "like we're trying [Lindsey]."

Lindsey was brought into the courtroom, although it is not clear from the transcript whether he stood near Reese. With the victim on the stand, the prosecutor asked her if Lindsey was one of the men

---

[6] (Citations, punctuation and emphasis omitted.) *Anderson v. State*, 262 Ga. 26, 27-28 (3) (a) (413 SE2d 732) (1992).

[7] See generally *James v. State*, 270 Ga. 675, 679 (11) (513 SE2d 207) (1999).

involved in the home invasion. The victim responded affirmatively. On cross-examination, with Lindsey still present, defense counsel asked the victim if she had said that Reese was darker in complexion than Lindsey. She replied that she had so testified. Defense counsel then asked her if she was sure about her description.

Although he now argues that the identification procedure was objectionable because it likely made the jury associate Reese with one of the men convicted of these crimes, he made no such argument below. In fact, defense counsel made use of Lindsey's presence by inviting a comparison of the men's appearances while the jury was in the courtroom. Reese cannot now complain of a procedure in which he participated and to which he failed to specifically object.[8]

In any event, there is nothing in the record indicating that the jury knew that Lindsey had been convicted of the crimes. We fail to see how Reese was harmed by the procedure.[9]

Finally, because Lindsey did not testify and no reference was made at trial to the content of any prior statements made by him, Reese was not denied his right to confront a witness testifying against him.[10]

5. Reese claims the trial court erred in not allowing him to introduce evidence of the victim's disciplinary history from her position as a police officer with the City of Conyers. He says her employment history "had the potential of showing" she falsified police reports or committed a "similar act of moral turpitude," and could have been used to impeach her credibility. This argument is without merit.

Instances of specific misconduct may not be used to impeach a witness' veracity unless the misconduct has resulted in the conviction of a crime involving moral turpitude.[11] Since no such conviction was shown to exist in this case, the trial court did not err in limiting Reese's cross-examination of the victim.

Moreover, a trial court may restrict cross-examination if the inquiry is not relevant to the issues being tried.[12] In this case, the trial court examined the victim's disciplinary records and determined that they were not relevant. The admission or exclusion of evidence on the ground of relevance lies within the sound discretion of the trial court.[13] The trial court did not abuse its discretion by finding that the victim's personnel records were not relevant to the charges pending against Reese.

---

[8] See *Williams v. State*, 234 Ga. App. 191, 195 (6) (506 SE2d 237) (1998); *Clayton v. State*, 203 Ga. App. 843, 845 (4) (a) (418 SE2d 610) (1992).

[9] See generally *Allen v. State*, 208 Ga. App. 854, 855 (2) (432 SE2d 600) (1993).

[10] See *Jacobs v. State*, 201 Ga. App. 57, 58 (2) (410 SE2d 320) (1991).

[11] *Dunton v. State*, 216 Ga. App. 191 (453 SE2d 800) (1995).

[12] *Cook v. State*, 221 Ga. App. 831, 834 (4) (472 SE2d 686) (1996).

[13] *Collins v. State*, 235 Ga. App. 852 (2) (510 SE2d 609) (1998).

6. Based on the foregoing, the trial court did not err in denying Reese's motion for new trial.

*Judgment affirmed. McMurray, P. J., and Phipps, J., concur.*

DECIDED DECEMBER 8, 1999.

*Hurl R. Taylor, Jr.,* for appellant.

*David McDade, District Attorney, Stephen L. Corso, Assistant District Attorney,* for appellee.