A00A1375, A00A1376. STUBBS et al. v. RAY et al.; and vice versa.
(539 SE2d 179)

SMITH, Presiding Judge.

Leonard and Carolyn Stubbs brought suit against St. Francis Hospital, Inc., Dr. Charles Ray III, and Radiology Associates of Columbus, P.C., Dr. Ray's employer, for damages for medical malpractice. The Stubbses alleged that after an angioplasty performed by Dr. Ray, Leonard Stubbs developed a blood clot in his right leg and that the defendants' negligence in delaying treatment caused problems resulting in the amputation of this leg above the knee. The defendants answered, denying liability. Eventually, the Stubbses settled with the hospital, and the hospital was dismissed with prejudice from the suit. The action against Dr. Ray and Radiology Associates was tried before a jury, which returned a defense verdict. The Stubbses appeal, contending in their sole enumeration of error that the trial court erred in charging the jury and in allowing written instructions to go out with the jury. Dr. Ray and Radiology Associates cross-appeal, conditioning consideration of the cross-appeal upon reversal of the main appeal. But because we find no error in the judgment below, we need not consider the cross-appeal. We affirm.[1]

1. The record shows that after his angioplasty procedure was completed, Leonard Stubbs was moved from the radiology suite, where the procedure was performed, to a floor of the hospital. The orders Dr. Ray had written included checking his right pedal pulses every 15 minutes for the first hour, then every 30 minutes for the next hour, and then twice a day. His nurse, an LPN, testified at trial that she checked his pedal pulse at noon, and it was "good." Shortly thereafter, Stubbs began "yelling out loud with pain," and she was unable to feel a pulse in his right foot. She telephoned radiology to speak with Dr. Ray, but the woman who answered said he could not come to the telephone and took a message. The nurse testified that after holding for a moment, she was told that Dr. Ray "would be up in

---

[1] Although it appears that the Stubbses have identified in their single enumeration of error two actions of the trial court they believe to be in error, we address them both out of an abundance of caution in our attempt to comply with the Supreme Court of Georgia's directive in *Felix v. State*, 271 Ga. 534 (523 SE2d 1) (1999). In the interest of clarity, however, we have separated the two contentions.

just a minute." After a while, when Dr. Ray had not appeared, the nurse called radiology again. This time, she was told that Dr. Ray was in the middle of a procedure with another patient and could not leave.

Dr. Ray acknowledged that a call came in from the floor nurse regarding Stubbs while he was in the middle of another procedure on a different patient. His recollection, however, was that he directed his technician, who took the call, to have the nurse call Dr. Lawhorne, a vascular surgeon who had referred Mr. Stubbs for the angiography. He testified that he heard his technician pass on that message. He never checked again on Stubbs before leaving the hospital that day, because he believed he had given an order to contact another doctor, and he expected it would be carried out. He had no recollection of a second call regarding Stubbs.

No evidence was presented showing that Dr. Lawhorne was ever called by anyone. Dr. Lawhorne arrived at Stubbs's bedside at approximately 3:00 p.m. and checked Stubbs out to the operating room, to attempt to revascularize the right leg. The next morning additional surgery was performed. Eventually, Stubbs developed an ischemic leg, which was amputated above the knee.

The Stubbses presented the expert testimony of a vascular surgeon, who testified that it fell below the standard of care for Dr. Ray not to follow up on the directive he had given to call Dr. Lawhorne and that it was necessary, to meet the standard of care, "to check and make sure . . . that the orders that we give the nurses to carry out are happening. We can't assume that it's happened and then forget about it."

Notwithstanding this testimony, the trial court charged the jury that if there exists no unusual feature that "calls for an exercise of medical skill or experience, a doctor may reasonably take for granted that the experienced staff of a modern hospital will attend to their ordinary and customary duties without detailed instructions." The Stubbses contend this charge was error, arguing that this charge, in essence, instructed the jury to disregard their expert's testimony. They acknowledge, however, that this charge "represents a long-standing principle of Georgia law."

Indeed, the principle embodied in the charge has long been the law in Georgia. In 1962, this court held:

A physician or surgeon is not negligent in failing to inspect or review the work of nurses, orderlies and other hospital employees in carrying out his instructions where the performance of such tasks does not involve the exercise of medical skill or experience; nor is he negligent in assuming that such employees will attend to their ordinary and customary

duties without his having to give them detailed instructions.

*Porter v. Patterson*, 107 Ga. App. 64, 65, hn. 3 (129 SE2d 70) (1962). See also *McClure v. Clayton County Hosp. Auth.*, 176 Ga. App. 414, 418 (3) (336 SE2d 268) (1985) (applied principle to find no evidence of negligence on part of doctor who assumed that nurses properly placed arm board before surgery); *Hill v. Hosp. Auth.*, 137 Ga. App. 633, 642-643 (II) (11) (224 SE2d 739) (1976) (principle applied to approve charge that physician need not remain at patient's bedside, but may assume that others employed by hospital are competent to carry out orders); *Su v. Perkins*, 133 Ga. App. 474, 479 (1) (211 SE2d 421) (1974) (principle applied to hold that physician not negligent in failing to personally supervise administration of injection by hospital nurse or give nurse detailed instructions as to proper method of injecting prescribed drug).

We cannot agree with the Stubbses that this fact situation is so distinguished from those in the cited cases that the principle should not apply. We find, in fact, no factual difference that would prevent the principle from applying. Therefore, notwithstanding the testimony of plaintiffs' expert, the trial court did not err in charging the jury on this principle.

2. The Stubbses also maintain that the trial court erred when it gave the jury a printed copy of the charge it had given orally. They again acknowledge, however, that the law in Georgia does not support their contention. *Anderson v. State*, 262 Ga. 26, 28 (3) (413 SE2d 732) (1992). As in *Reese v. State*, 241 Ga. App. 350 (526 SE2d 867) (1999),

> we fail to see how the jury would be confused by having a transcript of the instructions the court gave orally. Indeed, the contrary is more likely. . . . We believe the trial court's decision to give the jury a printout of the oral instructions could only have been beneficial here.

(Citations and footnote omitted.) Id. at 351-352 (3).

The Stubbses attempt to distinguish this case from the rule that such written instructions are permissible. They argue that the court's instruction on the standard of care was somehow deficient because it was not given immediately following the court's instruction on the elements of medical malpractice, including standard of care. They also focus upon the instruction's contradiction of their expert's testimony. But they never objected at trial to the order in which the charges were given, and the charge was a correct statement of the law, regardless of their expert's testimony. We find no error.

3. Given our affirmance of the judgment below, we need not consider the contentions in the cross-appeal.

*Judgment affirmed in Case No. A00A1375. Appeal dismissed as moot in Case No. A00A1376. Johnson, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 6, 2000.

*Agnew & Bennett, G. Michael Agnew, Brinkley & Brinkley, Jack T. Brinkley, Jack T. Brinkley, Jr.,* for appellants.

*Hatcher, Stubbs, Land, Hollis & Rothschild, Robert C. Martin, Jr.,* for appellees.