## A00A1989. LONDON v. THE STATE.
### (544 SE2d 525)

SMITH, Presiding Judge.

After a joint trial with co-defendant James Howard, Tycion London was found guilty by a jury of burglary, two counts of false imprisonment, and two counts of aggravated assault. His motion for new trial, as amended, was denied. He appeals following the grant of his motion to file an out-of-time appeal. London raises five enumerations of error: He challenges the denial of his motions to sever trial and for a directed verdict of acquittal, the testimony of a co-defendant who pleaded guilty before trial, and a jury instruction; he also raises the general grounds. We find no merit in any of London's contentions, and we affirm the judgment below.

The record shows that the charges against London arose out of a home invasion in Atlanta. When Atlanta police officers responded, the victims, three roommates and the girlfriend of one of them, informed the officers that three black men wearing bandannas over their faces had burst into their home in the early morning hours. The victims described the invaders as wearing dark, possibly green, sweat suits and stated that one of them had his hair styled in corn-rows or dreadlocks. The girlfriend told police she saw that the eyes of one of the invaders were green.

One victim stated that he and his girlfriend had been awakened when the men broke in and stomped through the house. They could hear one of the housemates screaming and knew he was being beaten. They hid in the shower, but were found and led to the kitchen by two men, one of whom had a knife. On the way, they passed their roommate, who had been beaten and was tied up and lying on the floor. The assailants demanded the key to a recording studio located in the basement of the home. The key was provided, and these victims were taken to the basement and tied up.

The victim who was beaten testified that two men grabbed him while he was sleeping, beat him, and "hog-tied" him. He testified they hit him with a hard object when he would not divulge the location of

the key to the studio. The third housemate testified that when he heard the commotion, he made his way to the attic, where he kept his rifle, and shot it to attract the attention of neighbors. He then saw two men running from the house to a car and shot toward the car headlights. This victim had known co-defendant Howard for about six years.

After hearing the gunshots, the two victims tied up in the basement heard their captor say, "I'm getting out of here," whereupon he left. The victims then heard "tires screeching off." They were able to struggle free and telephone the police from a neighbor's house.

Several Atlanta police officers responded to that call and a previous call reporting shots fired. After speaking with the victims, the officers noted that the door had been kicked in, there was a bullet hole in one of the vehicles parked outside, and a Taser gun had been left behind. One officer found a piece of a t-shirt in the street about a block away.

While on patrol, an Atlanta police officer heard the lookout and description posted for the men who had invaded the home. He decided to look for "anything suspicious" in the general area, and he observed a car with three occupants matching the description given. He moved closer and saw that the driver had cornrows in his hair, that the occupants of the car kept looking back at him, and that the backseat passenger "kept ducking down like he was doing something on the floorboard." The officer, along with another officer, pulled the car over in the parking lot of a doughnut shop. As they approached the car, they saw that the clothing worn by the occupants of the car also matched the descriptions given, a police scanner was on the backseat, and the backseat passenger was holding a portion of t-shirt with a distinctive pattern. They asked the car's occupants to leave the car and asked for permission to "look in" the car, which was given. Damp sweat clothes pushed up under the backseat were removed, as were red bandannas on the seats.

The victims were then brought to the parking lot to identify the suspects, who had been separated and placed in three different cars. One of the suspects was identified as Howard, with whom the victims were acquainted. London was also known to at least one of the victims. The suspects were then arrested and taken to the police station.

Shortly thereafter, one of the suspects, Laveal Jones, asked to speak with an officer and tell him what happened. Jones eventually pled guilty and testified for the State at trial.

1. London contends the trial court abused its discretion when it denied his motion to sever his trial from that of co-defendant Howard. London sought severance on the ground that his defense and that of Howard were inconsistent.

> When the death penalty is not sought, the severance of defendants' trials is within the sound discretion of the trial court and its decision will not be disturbed unless there is an abuse of that discretion. The burden is on the defendant moving for severance to demonstrate more than the possibility that a separate trial would provide him with a better chance of acquittal; he must establish a clear showing of prejudice.

(Citations omitted.) *Dixon v. State*, 268 Ga. 81, 83 (2) (485 SE2d 480) (1997). The fact that the defendants had inconsistent defenses is not in itself sufficient to warrant severance. Id. The trial court must consider three factors in deciding whether to grant severance: (1) whether the number of defendants creates confusion as to the law and evidence to be applied to each; (2) whether a danger exists that evidence admissible against one defendant might be considered against the other notwithstanding instructions to the contrary; and (3) whether the defenses are antagonistic to each other or each other's rights. *Shelley v. State*, 239 Ga. App. 841, 842 (2) (521 SE2d 855) (1999).

In this case, there were only two defendants. The law applicable to each was identical, and no showing was made that presenting evidence about both defendants would have confused the jury. Jones implicated them both. Contrary to London's argument, all evidence presented against Howard, including Jones's testimony, would have been admissible against London at a separate trial, and the defenses of London and Howard were not antagonistic. Howard maintained he did not participate in any crime and even that no crime occurred. London's defense was also that he did not participate in a crime and that, in fact, it was doubtful that a crime really took place. Neither defendant testified, and the only defense witness was an alibi witness for Howard. London failed to satisfy the criteria for severance, and the trial court did not err in denying his motion.

2. London maintains the trial court erred in denying his motion for a directed verdict of acquittal as to the counts of aggravated assault. He argues that a fatal variance exists between the allegations of the indictment and the evidence presented at trial with regard to how the aggravated assaults were committed. We do not agree.

Not all differences between an indictment and proof constitute fatal variances. An accused must be definitely informed of the charges against him so that he may present a defense, and he must be protected against a second prosecution for the same offense. If a variance does not present these dangers, it is not fatal. *Mitchell v. State*, 218 Ga. App. 330, 331 (461 SE2d 292) (1995). Here, the indict-

ment charged London, Jones, and Howard in Counts 4 and 5 with aggravated assault on two of the victims "by using a taser and a knife to forcibly enter the residence" and then binding the victims and demanding the key to the studio, "all with intent to commit armed robbery."

The victim in Count 4 testified that he was struck in the back of the head with a heavy metal object. In *Battles v. State*, 262 Ga. 415, 417 (5) (420 SE2d 303) (1992), the Supreme Court concluded that no fatal variance existed when the indictment charged that the victim had been hit with a wrench, while testimony at trial showed that the weapon used was a gun. The court concluded that because a wrench and a gun produce similar injuries when used to strike a victim on the head, the defendant was adequately informed of the charges against him and was able to prepare a defense. Id. at 417-418.

The facts here are even more compelling. A Taser *is* a heavy metal object, and thus no variance exists. Further, a heavy metal object and a Taser gun, when used as blunt objects to strike a victim, would produce similar injuries. London therefore was sufficiently informed of the charges against him to prepare a defense. *Battles*, supra. See also *Mitchell*, supra at 331-332 (no fatal variance because knife and broken glass produce similar injuries when used to stab).

As to Count 5, evidence was presented of the use of a knife. The girlfriend of the victim in Count 5 testified that the men who assaulted them had a knife and were holding it to her boyfriend's neck. She identified London as one of the men. It is clear that London would not face the danger of a subsequent prosecution for either charge, and therefore no fatal variance exists as to either charge.

Contrary to London's argument, a directed verdict of acquittal was not mandated by the fact that Howard was found guilty of a lesser offense. The inconsistent verdict rule was abolished by the Supreme Court in *Milam v. State*, 255 Ga. 560 (341 SE2d 216) (1986). See also *Larry v. State*, 266 Ga. 284, 285 (1) (466 SE2d 850) (1996).

3. London asserts error in the trial court's charge on aggravated assault. The trial court charged the jury that

[a] person commits aggravated assault when he assaults another person with intent to murder, rape, or rob, or with a deadly weapon or any object, device, or instrument which when used offensively against another person is likely to or actually does result in serious bodily injury.

London relies upon the principle that a conviction must be reversed if a reasonable possibility exists that because of an overinclusive charge the jury convicted the defendant of a crime not charged in the indictment. See, e.g., *Pettway v. State*, 204 Ga. App. 804 (420 SE2d

619) (1992). But no such possibility existed here. Although inapplicable portions of the Code section were given, that does not warrant reversal. *Kennedy v. State*, 205 Ga. App. 152, 155-156 (5) (a) (421 SE2d 560) (1992). And in this case, no evidence was presented regarding an intent to murder or rape. The indictment alleged intent to rob, and only that intent was shown. The jury was further instructed that the State must prove each element of the indictment. We find no reversible error. *Hill v. State*, 228 Ga. App. 362, 364 (2) (492 SE2d 5) (1997) (no reversible error caused by jury instruction that armed robbery committed through use of "offensive weapon" when indictment specified pistol, because no testimony presented that anything other than pistol used).

4. London contends the State engaged in prosecutorial misconduct because it had made a deal with Jones in exchange for his testimony and failed to disclose it to the defense, violating his due process rights.

Under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), the State must disclose material evidence favorable to the defendant, including impeachment evidence that could be used to show the bias or interest of a witness. *Ferguson v. State*, 226 Ga. App. 681, 682 (2) (487 SE2d 467) (1997). But to show a *Brady* violation, a defendant must show that the State had evidence of the deal and he did not, nor could he obtain it with reasonable diligence; that the State suppressed evidence of the deal; and that if the evidence had been disclosed, a reasonable probability existed that the trial's result would have been different. Id. at 682-683. Here, the record discloses no deal between the State and Jones.

Jones did plead guilty. He testified at trial that "some discussion" took place regarding his sentence. The defense was certainly aware of the discussions that took place and cross-examined Jones regarding them. The State has not denied that these discussions took place. But the State has denied that any deal or agreement was made with Jones. The prosecutor specifically stated before trial began that "[t]here is no deal, no promises have been made. He has pled guilty." It is clear that London has not satisfied the requirements for demonstrating a *Brady* violation.

5. London also raises the general grounds, particularly as to identity. He correctly notes that he was not positively identified by any victim as having committed an assault on them and that no weapon was placed in his hands by any of the victims. But that evidence was not necessary to authorize the jury to find him guilty. He was identified by a victim as being present during the home invasion. Jones's testimony implicated him as having been present not only at the scene of the crime but also at meetings when the crime was being planned. In addition, circumstantial evidence, including the clothing

found in the car and the pieces of the t-shirt found both in the car and near the scene of the crime, corroborated Jones's testimony and implicated all three men in the crime. It was not necessary to place a weapon in London's hands to find him guilty of being a party to the crime. *Parkman v. State*, 241 Ga. App. 756, 757-758 (3) (526 SE2d 640) (2000). The jury was charged on parties to a crime, and the evidence presented was sufficient to authorize them to find London guilty of the charged crimes under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 22, 2001.

*John R. Greco,* for appellant.

*Paul L. Howard, Jr., District Attorney, David E. Langford, Christopher M. Quinn, Assistant District Attorneys,* for appellee.