A02A0320. MORGAN v. THE STATE.
(564 SE2d 467)

RUFFIN, Judge.

A jury found Revandez Santonio Morgan guilty of armed robbery, kidnapping, aggravated assault, and possession of a firearm during the commission of a crime. Morgan appeals, challenging the sufficiency of the evidence. He also claims that the trial court erred in not severing his trial from that of his co-defendant, Reginald Harris, and in allowing the prosecutor to make improper closing arguments to the jury. For reasons that follow, we affirm.

1. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to support the jury's verdict and determine if a rational trier of fact could find each essential element of the crimes charged beyond a reasonable doubt.[1] We do not "weigh the evidence or determine witness credibility. Conflicts in witness testimony are matters of credibility for the jury to resolve. And as long as there is some evidence, even though contradicted, to support each fact necessary for the state's case, the verdict will be upheld."[2]

The victim, Michael Warner, testified extensively at trial. According to Warner, Morgan and Harris knocked on his apartment door on the evening of October 3, 2000. Morgan, who worked with Warner, asked to use Warner's telephone, and Warner agreed. While Morgan talked on the phone, Harris pulled a gun on Warner and stated, " 'I want the money. I want drugs. I want whatever you've got.' " Morgan began searching Warner's apartment, and Harris made Warner lie down on the floor. Finding no drugs in the apartment, Morgan told Warner to locate an individual named "Lolly," who apparently was a drug dealer. Warner responded that he did not know Lolly well and would not be able to find him. Nevertheless,

---

Morgan and Harris forced Warner out of the apartment, stating "'[w]e're taking you with us, because if we don't get what we come [sic] to get, you're going to die.'"

Morgan took Warner's keys, locked the apartment, and then led Warner to a car, where he and Harris searched him. At that point, Morgan and Harris took from Warner his driver's license, credit card, and $300 in cash. The two placed Warner in the front passenger seat of the car. Harris sat behind Warner with the gun to his head, while Morgan drove. During the drive, Harris threatened to kill Warner unless Warner told them how to find Lolly, and both Morgan and Harris began hitting him. At one point, Harris instructed Warner to put his hand out of the car window. When Warner did so, Harris placed the gun between Warner's fingers and shot it, leaving Warner "paranoid for [his] life."

Eventually, Morgan and Harris decided to check into a motel. Morgan obtained the room key, and he and Harris, who was holding the gun to Warner's back, forced Warner into the motel room. The two began making telephone calls from the room. During one of the calls, Harris put the gun down, and Warner attempted to escape. As Warner ran for the door, Harris shot the gun twice. Warner turned back toward Harris and tried to wrestle the gun from him. Morgan, who had briefly left the room, returned and bit Warner. At that point, Morgan gained control of the gun and forced Warner outside the room, toward the car. When they arrived at the car, Morgan shot Warner in the leg. Morgan and Harris then fled in the car.

Based on this evidence, a rational jury could find Morgan guilty beyond a reasonable doubt of armed robbery, kidnapping, aggravated assault, and possession of a firearm during the commission of a crime.[3] We note that Morgan testified at trial that he did not rob, kidnap, or assault Warner. On appeal, he claims that because his testimony, as well as other evidence at trial, conflicted with and undermined Warner's version, Warner "was not credible and no rational trier of fact could have relied upon his version of these events to support a conviction [on] these charges." As discussed above, however, the issue of witness credibility rests solely with the jury.[4] Jurors clearly resolved the evidentiary conflicts against Morgan, and we will not reverse that determination on appeal.[5]

2. Morgan also argues that the trial court erred in not severing the trials of the two defendants. In ruling on a motion for severance, the trial court must consider: "(1) whether the number of defendants creates confusion as to the law and evidence to be applied to each; (2)

---

[3] See *Reese v. State*, 241 Ga. App. 350-351 (1) (526 SE2d 867) (1999).

[4] See *Askew*, supra.

[5] See id.; *Reese*, supra.

whether a danger exists that evidence admissible against one defendant might be considered against the other notwithstanding instructions to the contrary; and (3) whether the defenses are antagonistic to each other or each other's rights."[6] The ruling on such a motion falls within the trial court's sound discretion, and we will not reverse that ruling absent an abuse of discretion.[7]

As an initial matter, Morgan has not shown that he moved for a severance in this case. Just before opening arguments, Harris' counsel informed the court that Harris had decided to testify and that his testimony might be antagonistic to Morgan. Harris' counsel stated that this situation "may lend itself to either [Morgan's counsel] moving for a severance, or me, on behalf of my client, moving for a severance." Morgan's counsel asserted that he was "blindsided" by this development, but never asked for a severance and ultimately stated "[w]e will just proceed." And although Harris' counsel stated that a severance might be appropriate, Morgan did not join in that statement. Morgan, therefore, has waived any complaint he may have had to the joint proceeding.[8]

Furthermore, even if Morgan properly preserved this argument for review, the trial court did not abuse its discretion in refusing to sever the defendants' trial. At trial, Morgan claimed that Warner was accidentally shot during a struggle for the gun after a drug deal between Warner and Morgan turned "sour." Morgan testified that he, Warner, and Harris went to the motel on October 3, 2000, as part of a drug transaction. According to Morgan, Warner pulled a gun during the transaction and shot at Morgan. Morgan managed to get his hands on the gun, but Warner jumped him. As he and Warner wrestled for the gun, it went off, and Morgan and Harris fled the scene.

Morgan now argues that Harris' trial testimony was antagonistic to this explanation of events. Upon review, however, we do not find Harris' testimony particularly antagonistic to Morgan. Certainly, portions of the testimony conflicted with Morgan's version. Harris testified, for example, that he was not with Morgan on October 3, 2000, and had never seen Warner before the trial. Yet, Harris' testimony also provided corroboration for Morgan's explanation. According to Harris, Morgan told him after the incident that Warner pulled a gun during an argument over drugs, they started struggling, and Morgan "went for the gun, and accidentally shot [Warner]." Harris' testimony thus *supported* Morgan's claim that Warner initially had the gun and was shot as the two men struggled over it.

Finally, assuming the conflicts between Morgan's version and

[6] *London v. State*, 247 Ga. App. 618, 620 (1) (544 SE2d 525) (2001).
[7] See id.
[8] See *Smith v. State*, 267 Ga. 372, 373 (2) (477 SE2d 827) (1996).

Harris' testimony created antagonistic defenses, that antagonism does not, in and of itself, require severance.[9] Instead, Morgan "must demonstrate a clear showing of prejudice and a consequent denial of due process in the absence of severance."[10] Morgan has made no effort to meet this burden and simply asserts, without argument or citation to the record, that the trial court committed "harmful error." Under these circumstances, we find no error in the trial court's refusal to sever the trial.[11]

3. In his last enumeration of error, Morgan claims that the trial court erred in allowing the prosecutor to make improper closing arguments to the jury. Again, we find no error.

(a) During his closing argument, the prosecutor stated: "[The defense has] the right to subpoena witnesses, just like we do." Morgan's counsel objected, asserting that the argument improperly shifted the burden of proof to Morgan. The trial court responded by instructing the jury that

> there is no burden on the defendant to prove his innocence, and the burden never shifts to the defendant to prove his innocence; however, the defense is entitled to subpoena witnesses, if they so desire. And the District Attorney has the right to comment on the fact that they do have the right to subpoena witnesses, the same as the State.

Morgan's counsel raised no further objection.

Morgan now argues that the trial court erroneously permitted the State, through its argument, to shift the burden of proof to him at trial. Morgan, however, failed to preserve this issue for appeal. Following Morgan's objection at trial, the court gave a curative instruction that directly addressed his concern about burden shifting. Morgan did not renew his objection or move for a mistrial after those instructions. "If the trial court's curative instructions were not sufficient, [Morgan] should have sought additional relief."[12] By failing to do so, he waived appellate review.[13]

(b) Morgan also argues that, during closing argument, the trial court improperly permitted the prosecutor to read aloud from a posterboard various legal principles relating to self-defense. Morgan's

---

[9] See id. at 373-374.

[10] Id. at 373.

[11] See id. at 373-374; see also *Jones v. State*, 225 Ga. App. 673, 676-677 (4) (484 SE2d 702) (1997); *Walden v. State*, 170 Ga. App. 880 (1) (318 SE2d 676) (1984).

[12] (Punctuation omitted.) *Wells v. State*, 243 Ga. App. 629, 631 (3) (534 SE2d 106) (2000).

[13] See id.; see also *Fowler v. State*, 251 Ga. App. 787 (1) (554 SE2d 808) (2001); *Seidenfaden v. State*, 249 Ga. App. 314, 316 (1) (547 SE2d 578) (2001).

counsel objected to this practice, stating: "Your honor, he's reading a lot of law here, and I think he is misstating self defense. . . . I would just ask the Court to tell the jury that they are supposed to listen to the law from the Bench." The trial court did just that, informing the jury that "the Court will instruct you what the law is," and Morgan's counsel did not object further.

Once again, Morgan failed to preserve this issue for review. Morgan raised an objection and specifically asked for curative instructions, and the trial court complied. By failing to object further or move for mistrial following these instructions, Morgan waived the claimed error.[14]

We also note that the trial court instructed the jury on the self-defense principles that the prosecutor was discussing when Morgan objected. "The practice of 'reading the law' has been abolished in Georgia, but 'counsel may still discuss, or even argue, during closing arguments the law that will be included in the court's charge.' "[15] And although Morgan baldly asserts that the prosecutor misstated the law, he offers no insight into *how* — in his view — the prosecutor misstated any legal principle. Furthermore, the trial transcript includes only part of the prosecutor's argument on this point, and Morgan has provided no record reference for the visual aids used by the prosecutor, which do not appear to be in the record. Under these circumstances, this claim of error presents no basis for reversal.[16]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED APRIL 12, 2002.

*Ellis R. Garnett*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[14] See *Wells*, supra.

[15] *Kirkland v. State*, 271 Ga. 217, 219 (3) (518 SE2d 687) (1999).

[16] See Court of Appeals Rule 27 (c) (2) (unsupported claim of error treated as abandoned); *Carswell v. State*, 251 Ga. App. 733, 736 (3) (555 SE2d 124) (2001) ("[W]here the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court. . . . When this is not done, there is nothing for the appellate court to review.") (punctuation omitted).