## A05A1127. MOSS v. WEISS et al.
### (621 SE2d 807)

ELLINGTON, Judge.

In this medical malpractice case, Mayona Moss sued her physician, William D. Weiss, M.D., for damages arising out of complications from knee replacement surgery.[1] A jury trial resulted in a verdict for Weiss. The trial court denied Moss' motion for new trial and she appeals, contending the trial court made several evidentiary errors and improperly instructed the jury. Finding no error, we affirm.

> Where the jury returns a verdict which the trial court enters as a judgment, the judgment must be affirmed on appeal if there is any evidence to support the verdict, because the jurors are the exclusive judges of the weight and credibility of the evidence. . . . [W]e must construe the evidence with every inference and presumption in favor of upholding the verdict.

(Citations and punctuation omitted.) *DeVooght v. Hobbs*, 265 Ga. App. 329, 334 (4) (593 SE2d 868) (2004).

Viewed in favor of the jury's verdict, the evidence showed the following facts. On December 2, 1999, Weiss performed knee replacement surgery on Moss. In Weiss' post-surgical instructions to hospital personnel, he specifically noted that he did not want "cold therapy" for Moss' knee by crossing out that portion of the hospital's standard post-surgical and admissions protocol sheets. During his hospital rounds the morning after surgery, however, Weiss observed that the hospital's nurses had placed ice packs on Moss' knee against his orders. Moss' knee had been wrapped in bandages and covered with a towel, with the ice packs placed on top. The evidence conflicted as to exactly when the ice was placed on Moss' knee.

Weiss testified that it irritated him that the nurses had failed to follow his orders, and he told Moss that the ice packs were placed on her knee against his orders. Weiss told the nurse in the room that he did not want ice packs on Moss' knee and she immediately removed the packs, so he thought "that was the end of it." He did not believe it was necessary to write the same instructions in Moss' chart. He also testified that he did not mention the ice packs in Moss' chart because he did not think use of the ice was significant. Weiss testified that he

---

[1] Moss also sued two other physicians who treated her knee following the December 1999 surgery. The court dismissed one of the physicians prior to the verdict. The jury found in favor of the other physician, but Moss did not seek a motion for new trial against him. Neither physician is a party to this appeal.

did not see any medical problems associated with the use of ice packs during his exam that day and he did not expect to see any problems develop because of them.

During a post-operative visit a few weeks after the surgery, however, Weiss observed that some of the tissue around the surgical site was not healing properly and was necrotic. Weiss did not know exactly what was causing the necrosis, but he recorded in Moss' chart that the problem appeared to arise from multiple factors and that the placement of ice over the bandages may have contributed to the problem. At trial, Weiss emphasized that he believed that use of the ice packs was only one possible contributing factor among many and that the ice packs, by themselves, did not cause the problem. According to Weiss, the other contributing factors included Moss' age and excess weight, her use of certain medications, her recent history of bronchitis, anemia, arthritis, and difficulty healing, and the use of a mechanical device to automatically move her knee following surgery.

Over the next few months, Moss continued to experience complications with her knee, including necrosis of the skin and a persistent infection around the prosthesis. She had multiple skin debridement procedures to treat the necrosis, and eventually had to have the knee prosthesis replaced due to the infection. Moss sued Weiss for medical malpractice, claiming that Weiss failed to properly sterilize the prosthesis prior to surgery, instruct the nurses regarding post-operative care, or monitor her wound post-operatively. She also asked for punitive damages, claiming that Weiss intentionally "cover[ed] up his negligence and its effects" and that he did so with the specific intent to harm her.

Following a trial, the jury found in favor of Weiss. Moss appeals from the court's denial of her motion for new trial.

1. Moss contends the trial court erred when it allowed Weiss to argue to the jury that the nurses' negligence in placing the ice packs on her wound was the cause of her complications. According to Moss, such argument was improper because Weiss was "clearly aware that an act of negligence had occurred," but concealed the nurses' negligence by intentionally "cleansing" any reference to the negligence from her medical records.[2] She also argues that, because Weiss concealed the use of ice packs from her, she was unable to file a timely cause of action against the hospital for such negligence. For the following reasons, these contentions are entirely without merit.

---

[2] Although Moss argues on appeal that Weiss' actions constituted fraud, she neglected to mention that the trial court granted a directed verdict to Weiss on her allegations of fraud. Moss has not challenged that directed verdict on appeal.

(a) The trial transcript shows that Weiss did not attempt to blame Moss' post-operative complications on negligent treatment by the hospital's nurses. On the contrary, Weiss repeatedly emphasized at trial that he did not think the nurses acted negligently when they placed the ice packs on Moss' knee. He testified that he understood why the nurses might use the ice packs as a matter of routine, since his partners and other physicians regularly use ice packs post-operatively. Weiss specifically testified that, even though he preferred not to use ice packs post-operatively, the placement of ice packs under these circumstances was common, was not a violation of the standard of care, and did *not* constitute negligent treatment. Weiss' expert witness, Dr. Kelly, also testified that orthopedic surgeons typically use ice post-operatively and such use is consistent with the standard of care. He said that his "typical knee replacement [post-surgical] protocol" is to place ice packs or other cold therapy devices on the surgical site and leave them there for 48 hours. Kelly testified that he has used ice post-operatively on approximately 3,500 patients and told the jury that he "very, very, very seriously" doubted that the use of ice packs in this case "had anything to do" with Moss' complications.[3] Accordingly, the record does not support Moss' contention that Weiss was "clearly aware" the nurses had acted negligently in using the ice packs or that he attempted to blame Moss' complications on the nurses' negligence.

(b) Although Moss claims that Weiss "admitt[ed] that he knowingly excluded any reference to [the nurses' negligent use of the ice packs] from the hospital record for the purpose of protecting the hospital nurses from blame" for Moss' complications, the transcript shows no such admission. Instead, Weiss testified that he did not write anything in Moss' chart *about their failure to follow his orders* because he had talked to the nurses, did not think it would be a problem in the future, and did not want to get the nurses into trouble with their superiors. Weiss emphasized that his decision on how to handle the situation with the nurses' failure to follow his orders had nothing to do with concealing the use of the ice packs. Weiss specifically testified that, if he had thought the nurses had breached the standard of care by using the ice packs, he would have written up an incident report. Weiss' expert witness, Dr. Kelly, also testified that, in his opinion, there was nothing unusual or improper with Weiss' failure to write in Moss' chart or otherwise report that the nurses had not followed his orders.

---

[3] Notably, Dr. Kelly also testified that Weiss' care of Moss in this case conformed to the applicable standard of care for physicians.

Further, Weiss testified that he did not specifically document the use of ice packs in Moss' chart on the day after surgery because such use did not violate the standard of care, he did not think that using the ice was significant, and, at the time, he did not think that the ice packs made any difference in Moss' medical care. Weiss' co-defendant, Dr. Marchman, another physician who treated Moss, also testified that ice packs are "such a common thing used in the hospital, particularly in a total joint operation post operatively, that I would bet you would not be able to find a reference to ice in any chart as [to] any patient in a hospital or anywhere as to when they put it on, the time they took it off. . . . It's a common occurrence."

Therefore, there was substantial evidence from which a jury could conclude that Weiss did not intentionally or improperly conceal the nurses' use of ice packs. *DeVooght v. Hobbs*, 265 Ga. App. at 334 (4) (any evidence standard).

(c) Moreover, the record does not support Moss' claim that Weiss prevented her from filing suit against the hospital by concealing the use of ice packs. Moss herself admitted at trial — upon questioning by her own counsel — that Weiss told her on the morning after surgery that the ice packs had been placed on her knee against his orders. Moss' medical records also showed that, just three weeks after surgery, Weiss noted that ice packs had been used post-operatively and recorded his concerns about whether the ice had contributed to Moss' problems.

2. Moss contends the trial court erred in failing to grant her motion for new trial on the basis that the verdict was contrary to the evidence. This enumeration is without merit for the same reasons as in Division 1, supra.

3. Moss contends the trial court erred in allowing an expert witness to testify that her knee prosthesis became infected during surgery.[4] She argues such testimony was mere speculation, prejudicial, and not disclosed during discovery. Moss has failed to show this Court that she objected to this testimony at trial on any of these bases.[5] Therefore, any alleged error is waived. *F. D. Wilson Trucking Co. v. Ferneyhough*, 269 Ga. App. 736, 739 (3) (605 SE2d 132) (2004).

---

[4] The expert witness testified that, based upon review of Moss' records, he believed with a reasonable degree of medical certainty that Moss' knee prosthesis was infected at the time it was implanted and this was the primary cause of the failure of her implant. He also testified that persistent infections occurred in a small percentage of implants even without any negligence, and he did not think Weiss was negligent in Moss' treatment. Further, he opined that the necrotic tissue around Moss' wound was a separate problem that could have been caused by a number of factors, including health problems associated with Moss' age and the use of tissue clamps during surgery.

[5] The record shows that Moss filed a motion in limine to exclude all expert testimony regarding causation unless it was supported by "corroborating evidence." The trial court did not

4. Moss contends the trial court erred in instructing the jury that a doctor is generally not liable for independent acts of a hospital or its employees, including its nurses, arguing that Weiss' concealment of the nurses' negligence made him liable. As noted above, Weiss consistently denied at trial that the nurses' use of ice packs was negligent or that he tried to conceal it. Moss, however, repeatedly characterized the nurses' actions as negligent. It is undisputed that the nurses were employed by the hospital, not by Weiss. We find that, under these circumstances, Weiss was entitled to a jury instruction that, to the extent the jury found the nurses' actions were negligent, Weiss could not be held liable for their actions. See *Su v. Perkins*, 133 Ga. App. 474, 479 (1) (211 SE2d 421) (1974) (a nurse who negligently gave an injection was an employee of the hospital, not the defendant physician, so the physician was not liable on the basis of respondeat superior); see also *Stubbs v. Ray*, 245 Ga. App. 785, 786-787 (1) (539 SE2d 179) (2000) (a physician is not negligent in failing to inspect or review the work of nurses in carrying out his orders where the work does not involve the use of medical skill or experience, nor is he negligent for assuming that nurses are competent to carry out his orders without additional supervision).

5. Moss argues that the trial court erred in refusing to give her requested jury charge on ratification. She claims that Weiss "ratified" the nurses' negligence when he intentionally concealed it from Moss and, by doing so, he assumed liability for that negligence. Moss failed to cite to any authority in the trial court to support a jury instruction that a physician's failure to report an act by another health care provider on a patient's records amounts to a ratification and assumption of liability for that act. Further, Moss failed to cite to authority in her appellate brief for the instruction or to show that the court's refusal to give the instruction constituted reversible error.[6] Accordingly, this enumeration is deemed abandoned. Court of Appeals Rule 25 (c) (2).

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

---

rule on the motion, but told Moss she could object at trial to the experts' testimony if she felt that there was no foundation for the testimony. Moss responded that she would make objections at the appropriate time during trial.

[6] Although Moss cites to OCGA § 23-3-53 in her appellate reply brief, no such section exists in the Georgia Code. Further, her reliance on *Kent v. White*, 238 Ga. App. 792 (520 SE2d 481) (1999), is misplaced, as the case does not stand for the proposition for which it is cited. See id. at 795 (3) (holding that an express contract could be found between the parties when the appellant had consistently paid the appellee on an hourly basis as the fees were incurred and, when the appellant received invoices for a new job showing a higher hourly rate, he failed to object to the new rates or the invoices).

DECIDED OCTOBER 4, 2005.

*Robert C. Koski,* for appellant.
*Forrester & Brim, Weymon H. Forrester, James E. Brim III, McClure, Ramsay, Dickerson & Escoe, John A. Dickerson,* for appellees.