## A06A2462. STEELE et al. v. ATLANTA MATERNAL-FETAL MEDICINE, P.C. et al.

(641 SE2d 257)

RUFFIN, Judge.

Plaintiffs Monique and Wayne Steele filed a medical malpractice action against defendants Atlanta Maternal-Fetal Medicine, P.C. and Paul Browne, M.D. (collectively, "Dr. Browne"), alleging that Dr. Browne's negligent failure to hospitalize Mrs. Steele when he discovered that her blood pressure had spiked resulted in the death of their fetus. The jury returned a verdict for the defendants.[1] Following the denial of their motion for new trial, the Steeles appeal, asserting that the trial court erred in instructing the jury, permitting the defense to use portions of a medical text during the re-direct examination of Dr. Browne, denying their requests to strike two jurors, and allowing the introduction of certain evidence. For reasons that follow, we affirm.

We will affirm a jury verdict if there is any evidence to support it, construing the evidence in a light most favorable to the prevailing party, with every inference and presumption in favor of sustaining the verdict.[2] We apply the same standard in reviewing a motion for new trial.[3]

So viewed, the evidence shows that Mrs. Steele had a history of hypertension that resulted in the premature delivery of a son during a previous pregnancy. During a subsequent pregnancy, she began prenatal treatment with Katz, Gladstone and Rabin, obstetricians, in May 2000. Mrs. Steele began taking medication for her elevated blood pressure in June and the medication was increased when her blood pressure continued to rise. In July, Dr. Rabin referred her to Dr. Browne's practice, a group of maternal-fetal medicine specialists. Mrs. Steele had seven appointments with Dr. Browne between July and October. On Thursday, October 19, Dr. Browne found that her blood pressure had increased to 170/105. Dr. Browne doubled Mrs. Steele's blood pressure medication, performed an ultrasound, ordered several laboratory tests, and directed her to have her blood pressure checked at Dr. Rabin's office on Monday, October 23. According to Dr. Browne, the laboratory tests were "normal." On October 22, Mrs. Steele woke at 8:00 a.m. and then felt heavy pressure and intense pain in her abdomen. After several telephone conversations with her midwife, Mrs. Steele was admitted to the hospital and her fetus was delivered stillborn at 6:49 p.m.

---

[1] This is the second trial of this case. The jury returned a defense verdict in the first trial, which this Court reversed. See *Steele v. Atlanta Maternal-Fetal Medicine*, 271 Ga. App. 622 (610 SE2d 546) (2005).

[2] See *Edwards v. Sabat*, 263 Ga. App. 852 (589 SE2d 618) (2003).

[3] See *R. O. C. v. Estate of Bryant*, 279 Ga. App. 652, 653 (1) (632 SE2d 429) (2006).

The cause of the miscarriage was placental abruption. At trial, the Steeles's expert testified that Dr. Browne's failure to do a follow-up blood pressure check and to hospitalize Mrs. Steele deviated from the standard of care and contributed to the death of her fetus. Dr. Browne's expert disagreed, testifying that Dr. Browne met the standard of care in treating Mrs. Steele and that he could not have prevented her placental abruption. Following the trial, the jury returned a verdict for the defense.

1. In their first enumeration, the Steeles allege that the trial court's response to a question posed by the jury was erroneous. During deliberations, the jury requested a copy of the jury charges and two medical articles. After a brief discussion with counsel, during which the attorneys agreed that the jury should not get a copy of the articles, the trial court instructed the jury as follows:

> Ladies and gentleman, I was thinking for a minute just to send the note back saying that we were not able to comply with your requests. But it made more sense to bring you out and tell you that, but also tell you why [we are] not able to. The two [medical articles] that you asked for . . . [cannot] . . . go out with you. And the reason for that is a rule generally referred to as a continuing witness rule. Data and evidence that [do] go out with the jury [are] fairly static. It is, this occurred on this day or it is a photograph. It is fixed. A deposition is the opinion of somebody or their testimony. The bulletins that you [have asked for] are the opinions of folk, their testimony, their comments, their suggestions. Witnesses [do not] go back into the jury room with the jury, because it puts too much emphasis just on what that witness had to say. It would do the same thing with other bits of evidence that essentially — pieces of evidence that are essentially opinion in nature. And [that is] the reason that they [do not] . . . head back out with you. The common remark that often I would write on an inquiry that deals with an evidentiary question is . . . [that is] the evidence. The evidence is closed and you will best remember the evidence. But it seemed in this instance to make some — to make sense to me to give you some explanation of why [I am] doing that.

According to the Steeles, the medical literature was neither evidence nor testimony and the trial court erred in charging the jury otherwise.

However, the Steeles have failed to provide a record citation to show where the articles were mentioned during the trial and we will

not cull the voluminous record on their behalf.[4] We will not consider an enumeration that is not supported in the brief by specific reference in the record.[5] And, pretermitting their waiver of this issue, the Steeles do not argue that the trial court's characterization of the articles caused them harm. Because the Steeles must show harm as well as error to prevail, this enumeration presents no basis for reversal.[6]

2. The Steeles further contend that the trial court erred in allowing the defense to "blow up on a 6 x 10 foot screen, admit into evidence[,] and quote from with unbridled discretion the Williams Textbook on Obstetrics" during re-direct examination of Dr. Browne. As an initial matter, we note that while the defense did ask Dr. Browne two substantive questions about the Williams Textbook and apparently showed the jury one particular page of the textbook, counsel did not quote from it.[7] Moreover, it does not appear that the Williams Textbook was admitted into evidence.[8] To the extent that the Steeles argue that the trial court erred in allowing defense counsel to use the textbook during re-direct examination, we are unable to address this argument.

During cross-examination, counsel for the Steeles attempted to impeach Dr. Browne by reading an excerpt from his deposition. In response, Dr. Browne replied, "[w]hat you read into the record[,] I believe[,] is the passage from Williams Textbook of Obstetrics, that entire section. [That is] not my testimony, [that is] your statement and you asked if I agreed with that statement, and the answer is yes, I agree. . . ." Then, after defense counsel began to question Dr. Browne about the Williams Textbook on re-direct examination, counsel for the Steeles objected, arguing that Dr. Browne interjected the Williams Textbook during cross-examination, not counsel for the Steeles.

Unfortunately, the appellate record does not contain the relevant portion of Dr. Browne's deposition.[9] Moreover, the substance of plaintiffs' counsel's objections to the use of the Williams Textbook

---

[4] See *Luong v. Tran*, 280 Ga. App. 15, 16 (1) (633 SE2d 797) (2006); *Wilson v. Mallard Creek Holdings*, 238 Ga. App. 746, 747 (519 SE2d 925) (1999) (" 'It is not the function of appellate judges to engage in the insipid search for support of alleged error without citation to relevant parts of the record.' ").

[5] See id.

[6] See *Martini v. Nixon*, 185 Ga. App. 328, 330 (6) (364 SE2d 49) (1987).

[7] The Steeles do not provide a record citation for their contention that defense counsel quoted from the textbook.

[8] Again, the Steeles do not provide a citation to the record where the textbook was admitted into evidence.

[9] See *Cole v. Fauk*, 253 Ga. App. 892, 895 (3), n. 14 (560 SE2d 772) (2002) ("Assuming, for the sake of argument, that copies of the [document] are buried in the record, we remind appellants that it is not the function of an appellate court to cull the record.") (punctuation omitted).

during re-direct examination, defense counsel's responses thereto, and the trial court's rulings thereon were made during two untranscribed bench conferences.[10] Finally, the record does not contain a copy of the page of the textbook that was shown to the jury.[11] Because the record is incomplete, we are unable to discern the trial court's rationale for permitting the defense to use the textbook during re-direct examination or to make a decision regarding the legality of that apparent ruling. "In the absence of a sufficient record, we must assume that the trial court's ruling was proper."[12] Thus, this enumeration presents no basis for reversal.[13] Moreover, we note that even if the trial court's evidentiary ruling regarding the textbook was erroneous, because the contents of the offending page of the textbook are not included in the record, the Steeles have not shown how they were harmed by defense counsel's use of it.[14]

3. The Steeles also contend that the trial court erred in denying their motion to strike two jurors for cause. The Steeles sought to disqualify one juror who was previously treated by another doctor in Dr. Browne's office during her pregnancy and who indicated that she might sympathize with Dr. Browne because she was being sued in her capacity as a psychologist. They also moved to disqualify another juror who expressed bias in favor of Dr. Browne because he had a close cousin who was a doctor. Although the trial court did not disqualify these jurors, neither juror served on the jury that heard the case.

Assuming, however, for the purpose of argument that these jurors should have been disqualified by the trial court, the Steeles are not entitled to reversal on this basis as they have not shown by the record that they exhausted all of their peremptory strikes.[15] "Error must appear from the record sent to this court by the clerk of the trial

---

[10] The Steeles do not enumerate as error the court reporter's failure to transcribe the bench conferences.

[11] Again, the Steeles do not provide a record citation for a copy of the textbook page.

[12] *Galloway v. Linnell*, 242 Ga. App. 221, 222 (1) (529 SE2d 226) (2000); see also *Kmart Corp. v. Merriweather*, 254 Ga. App. 13, 14 (561 SE2d 181) (2002).

[13] See *High v. Zant*, 250 Ga. 693, 698 (11) (300 SE2d 654) (1983) ("Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f). When this is not done, there is nothing for the appellate court to review.") (punctuation omitted).

[14] See *Martini*, supra (appellants must show harm as well as error to prevail on appeal); *Kmart*, supra.

[15] See *Eco-Rez, Inc. v. Citizens Bank of Swainsboro*, 141 Ga. App. 90 (1) (232 SE2d 587) (1977); *Felker v. Johnson*, 53 Ga. App. 390, 395 (2) (186 SE 144) (1936) (" '[W]here it does not affirmatively appear from the record that a party had exhausted his peremptory challenges at the time the full panel of jurors was accepted and sworn, the appellate court will presume that he was not prejudiced by the action of the court in erroneously disallowing his challenge for cause, and will not grant a reversal for the alleged error.' ").

court. The burden is on the party alleging error to show it affirmatively by the record."[16] Thus, as the Steeles have shown no harm from the trial court's refusal to disqualify the two jurors, this enumeration of error is without merit.

4. In their final enumeration, the Steeles assert that the trial court erred in permitting the defense to introduce evidence "as to what could have or should have been done on October 22," arguing that this Court's opinion regarding the first trial of this case proscribed the admission of any such evidence at a subsequent trial. The Steeles have misinterpreted our previous opinion.

During closing argument in the previous trial, defense counsel argued that the defendants were entitled to a verdict in their favor if the jury found that the Steeles failed to prove that the conduct of the midwife and Mrs. Steele after 8:00 a.m. on October 22 was not an intervening cause of the fetal death.[17] We concluded that this argument was "contrary to the evidence and improper under the law" because the medical evidence *introduced during the first trial* established that the Steeles's fetus could not have been saved by any action taken after 8:00 a.m. on October 22.[18] Thus, our ruling in the prior appeal was specific to the facts elicited during that trial, and did not constitute a blanket prohibition against the introduction of evidence at a subsequent trial.

Finally, the Steeles appear to be alleging as error a single hypothetical question and the witness's response thereto.[19] Defense counsel posed the following question to Dr. Browne:

> [We have] talked about the decreased movement for two days and the opinion of that. Let me give you a different set of facts. Let me ask you to assume that there is testimony from . . . [the midwife] that [Mrs.] Steele told her at nine o'clock in the first phone call that the baby was moving. That at twelve o'clock, in the second phone call, she told her that the baby was moving. And let me ask you to assume that [Mrs.] Steele testified that she understood the significance of the movement of her fetus in terms of its well being, and that

---

[16] (Punctuation omitted.) *Brown v. C & S Nat. Bank*, 168 Ga. App. 385, 387 (4) (308 SE2d 850) (1983), rev'd on other grounds, 253 Ga. 119 (317 SE2d 180) (1984).

[17] See *Steele*, supra at 624 (1).

[18] Id.

[19] To the extent that the Steeles assert that the introduction of any additional evidence or testimony was improper, they have waived such assertion by failing to provide citations to the record regarding any allegedly objectionable evidence. See *Smyrna Dev. Co. v. Whitener Ltd. Partnership*, 280 Ga. App. 788, 790 (2), n. 3 (635 SE2d 173) (2006).

had the baby not been moving, she would have told [the midwife] that at nine o'clock or at twelve o'clock.

In their argument, the Steeles "note" that the midwife did not testify at trial and that there was no evidence introduced to substantiate the facts set forth in the hypothetical. However, the Steeles have failed to show that they objected to the purportedly improper hypothetical at trial and, thus, have waived their right to assert any error flowing therefrom.[20]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JANUARY 12, 2007.

*Peterson & Harris, Jim N. Peterson, Jr.,* for appellants.
*Hall, Booth, Smith & Slover, John E. Hall, Jr., Jonathan Marigliano,* for appellees.

