A08A0756. WALLS v. SUMTER REGIONAL HOSPITAL, INC.
(666 SE2d 66)

RUFFIN, Presiding Judge.

Sallie Walls sued Sumter Regional Hospital ("SRH") following the death of her newborn son, alleging claims including medical and ordinary negligence. The trial court directed a verdict in favor of SRH as to the ordinary negligence claims, and the jury found in favor of SRH as to Walls's remaining claims. Walls appeals, alleging generally that the trial court erred in granting a directed verdict as to her ordinary negligence claims and in excluding certain evidence. As Walls failed to establish error, we affirm.

A trial court properly grants a directed verdict where "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[1] In determining whether any conflict in the evidence exists, the evidence must be construed in favor of the nonmoving party.[2] "The standard used to review the grant or denial of a directed verdict is the any evidence test."[3]

So viewed, the evidence shows that Walls gave birth to a son, Church, at SRH on October 29, 2002. The hospital drew blood from the newborn on October 31, 2002 and sent it to the Georgia Public

---

[1] OCGA § 9-11-50 (a).

[2] See *Moran v. Kia Motors America*, 276 Ga. App. 96 (622 SE2d 439) (2005).

[3] (Punctuation omitted.) Id.

Health Laboratory for mandatory genetic testing.[4] Church died on November 9, 2002, of complications from galactosemia.[5] Church's blood specimen arrived at the Public Health Laboratory on November 14, 2002, and testing showed the infant had galactosemia.

Walls filed a wrongful death action against SRH on October 4, 2004, alleging a single count of professional negligence based on SRH's purported failure to submit Church's specimen to the state laboratory within 24 hours of drawing his blood.[6] Shortly before trial, Walls filed an amended complaint, restating her original claim as Count I and adding the following additional language thereto: "Medical Negligence of Defendant [SRH] — Failure to send in accordance with [r]egulation — Negligence Per Se." She also added four new counts including, inter alia, two counts styled as "ordinary negligence." Specifically, Walls claimed in Count II of the amended complaint that SRH was negligent in failing "to review and consider" state criteria for handling newborn screening. In Count V, she alleged that SRH's failure to implement a more reliable delivery method for test samples constituted ordinary negligence.

At trial, SRH moved for a directed verdict on "the ordinary negligence counts of the Plaintiff's complaint." The trial court granted the motion, dismissing all ordinary negligence claims and concluding that Walls's claims based on SRH's decision regarding the method of delivery of the specimen sounded in professional negligence. The jury found in favor of SRH as to Walls's remaining claims.

Walls filed a motion for new trial, and the trial court initially granted it, concluding that "sufficient evidence was introduced at trial to require the instruction of the jury as to the law of ordinary negligence and to require that argument regarding an ordinary negligence theory of recovery should have been allowed." Then, on reconsideration, the trial court reversed its ruling and denied the motion for new trial. In the order, the trial court concluded that Walls's claims regarding SRH's decision regarding the proper protocol for mailing newborn screening specimens constituted profes-

---

[4] See OCGA § 31-12-6 (requiring the Department of Human Resources ("DHR") to promulgate rules for newborn testing and treatment for certain genetic conditions).

[5] Galactosemia is one of the genetic conditions that the screening test would have detected. See OCGA § 31-12-6 (a). It is a potentially fatal condition that can be treated with early detection.

[6] The expert affidavit attached to the complaint states that:
It is my opinion that the above noted delay in submitting the NBS test was a deviation from the standard of care required of hospitals, hospital nurses and nursery personnel and physicians engaged in the treatment and care of newborn infants when the . . . test specimen was not timely received by the Georgia Human Resources Central Laboratory.

sional malpractice. It also determined that, in her amended complaint, Walls specifically designated Count I — her claim for delayed mailing in violation of state regulations — as professional negligence, not ordinary negligence. This appeal followed.

1. In her first three enumerations, Walls challenges the trial court's rulings regarding her claims for ordinary negligence. Enumeration one alleges that the trial "court erred in refusing to give requested charges on ordinary care on the grounds that there was no evidence introduced of ordinarily negligent delayed mailing, proceeding as if a directed verdict were proper."[7] In her second enumeration, Walls avers that the trial court erred in precluding closing argument on the issue of ordinary negligence. Then, in a third enumeration, she argues that the trial court erred in refusing to charge on ordinary negligence, which she contends was raised in Count I of her amended complaint.

In each of these enumerations, Walls essentially challenges the trial court's directing a verdict as to her claim for ordinary negligence based on SRH's purported delayed mailing of Church's specimen. Walls has waived this challenge by failing to raise it at trial, however. In her amended complaint, Walls clearly and specifically titled her claim based on delayed mailing as "medical negligence." Pretermitting whether this characterization by Walls precluded her from arguing that the claim was actually an ordinary negligence claim, she never made this argument at trial. SRH moved for a directed verdict "to take out the ordinary negligence counts of [Walls's] complaint," arguing that all of the claims, including those for ordinary negligence, alleged in Counts II and V — based on SRH's alleged failure to review DHR communications and to implement a more expeditious system for delivering the blood samples to the state laboratory — constituted professional rather than ordinary negligence. In response, Walls argued that those claims were properly characterized as ordinary negligence. She fails to demonstrate that she ever asserted before the trial court that her claim for ordinary negligence was based on evidence regarding delayed mailing and should not be dismissed.

We are a court for the correction of errors committed in the trial court.[8]

---

[7] We note, however, that the argument section for this enumeration focuses almost wholly on whether SRH provided direct evidence to support its claim that it timely mailed the infant's test sample. We take this opportunity to remind counsel that an enumeration of error may not be expanded by argument. See *Dennis v. Malt*, 196 Ga. App. 263, 265 (2) (395 SE2d 894) (1990).

[8] See *Seeley v. Seeley*, 282 Ga. App. 394, 396-397 (2) (638 SE2d 837) (2006).

> To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, "[She] must stand or fall upon the position taken in the trial court." Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court.[9]

Walls's position throughout the entire trial was that the alleged delay in mailing her son's specimen constituted professional, or "medical," negligence. Thus, we will not consider her arguments on appeal that the trial court erred in directing a verdict as to her claim for ordinary negligence based on late mailing.[10] Accordingly, Walls's first three enumerations present no basis for reversal.

2. Walls also argues that the trial court erred in directing a verdict as to her ordinary negligence claims based on SRH's "failure to heed a warning and adopt the state public health physicians' requested express delivery protocol contained in amended Counts II and V." We disagree.

In August 2002, DHR distributed to hospitals, including SRH, a recommended newborn screening protocol which suggested, inter alia, that hospitals transmit newborn specimens within 12 hours using, when possible, "courier service or overnight delivery to assure that the cards arrive as quickly as possible." The protocol was simply a recommendation, however. State regulations required only that specimens drawn from infants be mailed to the state laboratory within 24 hours, and they did not require overnight or expedited mail.

Walls claimed that SRH's decision not to implement the recommended protocol caused her son's death, and she characterized her claims based on this issue as both ordinary and medical negligence. On appeal, she alleges that the trial court erred in directing a verdict as to her ordinary negligence claims based on the hospital's decision to use regular mail rather than expedited delivery.[11]

"[W]hether a complaint alleges ordinary negligence or professional malpractice is a question of law for the court, regardless of how the plaintiff categorizes it."[12]

> Although complaints against professionals may state claims based on ordinary as well as professional negligence, where

---

[9] Id.

[10] See id.; see also *CPD Plastering v. Miller*, 284 Ga. App. 172, 174 (1) (643 SE2d 392) (2007).

[11] Walls's professional negligence claims based on the hospital's decision not to follow the recommended protocol remained for the jury, which found in favor of SRH.

[12] (Punctuation omitted.) *Burke v. Paul*, 289 Ga. App. 826, 828 (658 SE2d 430) (2008).

the allegations of negligence against a professional involve the exercise of professional skill and judgment within the professional's area of expertise, the action states professional negligence.[13]

In *Stafford-Fox v. Jenkins*,[14] we held that Stafford-Fox's claim that her physician failed to establish or follow proper procedures to ensure that he recognized and acted upon her medical test results did not constitute a claim for ordinary negligence, reasoning that the doctor's actions were "not purely administrative acts, but involve[d] the exercise of medical knowledge, skill or judgment in diagnosing a medical condition and rendering appropriate treatment."[15] The same rationale applies here.

As the trial court properly concluded, SRH,

in deciding whether to follow the recommended protocol[,] had to exercise medical judgment to determine what to do to treat the patient. [SRH] had to assess the seriousness of the diseases tested for, how to draw the samples, and how and when to submit the samples to appropriately treat the patient.

It follows that the trial court did not err in directing a verdict as to Walls's ordinary negligence claim based on SRH's decision to not follow the recommended protocol.[16]

3. In her final two enumerations, Walls argues that the trial court erred in excluding evidence: (1) regarding statistics provided to SRH showing that, "in the previous period," 25 percent of the specimens sent by SRH to the state laboratory were in transit for at least six days; and (2) "that specimens collected over three days, and allegedly mailed the next day, arrived together much delayed and the same day in a single batch." In her brief, Walls argues that the trial court made several erroneous factual findings in excluding such evidence and that the court erred in concluding that the evidence constituted inadmissible, prejudicial character evidence under

---

[13] *Stafford-Fox v. Jenkins*, 282 Ga. App. 667, 671 (2) (639 SE2d 610) (2006).

[14] Supra.

[15] Id.

[16] See id.; see also *In re Carter*, 288 Ga. App. 276, 287-288 (4) (a) (653 SE2d 860) (2007) (patient's claim against physicians and medical practice based on their failure to properly notify the parent of their child's positive sickle cell test under the Georgia Newborn Screening program constituted a claim for medical malpractice, not simple negligence); *Upson County Hosp. v. Head*, 246 Ga. App. 386, 392 (1) (540 SE2d 626) (2000) (patient's "claim that the hospital either failed to follow established anesthesia procedures or protocols or failed to have any established procedures or protocols in place is a claim for professional negligence").

OCGA § 24-2-2.[17]

However, Walls fails to provide a citation to the record for the motion(s) in limine or the trial court's ruling and exclusion of the evidence.[18] " 'The burden is on the party alleging error to show it affirmatively by the record.' "[19] And we will not cull the voluminous record — here, consisting of 25 volumes and thousands of pages — on her behalf, as "[i]t is not the function of appellate judges to engage in the insipid search for support of alleged error without citation to relevant parts of the record."[20] Thus, these enumerations present no basis for reversal.[21]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED JUNE 27, 2008 —
RECONSIDERATION DENIED JULY 23, 2008 ▮

*Roseman & Citron, Barry L. Roseman*, for appellant.
*Tisinger, Tisinger, Vance & Greer, David H. Tisinger, Paul D. Ivey, Jr.*, for appellee.

---

[17] For example, Walls refers to the trial court's "clear misapprehensions of fact" and "clear factual mistake as to what this evidence might show."

[18] We note that we previously ordered Walls "to recast her [original] brief in accordance with the rules of this [C]ourt" based, inter alia, on her failure to comply with Court of Appeals Rule 25 (c) (1).

[19] *Steele v. Atlanta Maternal-Fetal Medicine, P.C.*, 283 Ga. App. 274, 278 (3) (641 SE2d 257) (2007).

[20] (Punctuation omitted.) *Wilson v. Mallard Creek Holdings*, 238 Ga. App. 746, 747 (519 SE2d 925) (1999). See also *Durham v. Mathis*, 258 Ga. App. 749, 752-753 (1) (575 SE2d 6) (2002).

[21] We note, however, that the evidence that Walls argues was erroneously excluded appears to be cumulative, as the trial court did admit letters from DHR warning SRH of the dangers of "unsatisfactory specimens." The letters referenced a report specifying the number of specimens sent from SRH to the laboratory that were in transit more than five days.