A08A2122. SAGON et al. v. PEACHTREE CARDIOVASCULAR AND THORACIC SURGEONS, P.A.

(677 SE2d 351)

BERNES, Judge.

Appellant Sharon Sagon, individually and as executrix of the estate of Raymond M. Sagon, her deceased husband, filed suit against appellee Peachtree Cardiovascular and Thoracic Surgeons, P.A. ("PCTS") for medical malpractice, wrongful death, negligent supervision, pain and suffering, and medical and funeral expenses associated with her husband's death. Sagon alleged that PCTS's physicians, nurses, and staff members negligently failed to assess, document, diagnose, and treat her husband's post-operative pulmonary embolism condition, which resulted in his death. Following trial, the jury returned a verdict in favor of PCTS and the trial court entered the final judgment accordingly. Sagon filed a motion for new trial and the trial court denied the motion. Sagon appeals, contending that a new trial is required since the trial court erred in failing to charge the jury as to the standard of care owed by PCTS's nonphysician employees. We discern no reversible error and affirm.

> Where the jury returns a verdict which the trial court enters as a judgment, the judgment must be affirmed on appeal if there is any evidence to support the verdict, because the jurors are the exclusive judges of the weight and credibility of the evidence. We must construe the evidence with every inference and presumption in favor of upholding the verdict.

(Citation and punctuation omitted.) *Moss v. Weiss*, 275 Ga. App. 690 (621 SE2d 807) (2005).

So viewed, the trial evidence showed that a physician at PCTS performed coronary artery bypass grafting surgery on Mr. Sagon on July 15, 2002. Mr. Sagon was discharged from the hospital three days after the surgery, with directions to follow up with his primary care physician and cardiologist, to return to PCTS for a follow-up examination in thirty days, and to contact the PCTS office if he experienced any problems. Within three days after his discharge, the Sagons contacted PCTS and reported that Mr. Sagon had been crying, was anxious, and could not sleep. Sagon claimed that she became concerned about Mr. Sagon's mental health. Based upon these described symptoms, a PCTS nurse suggested that Mr. Sagon likely was experiencing anxiety attacks, which were to be expected following cardiac surgery. A PCTS physician prescribed Xanax to treat Mr. Sagon's symptoms.

When Mr. Sagon's symptoms persisted, the Sagons purportedly contacted the PCTS office again and went to the office for an examination and treatment. During this office visit, Mr. Sagon was able to walk without assistance and did not appear to be in distress. A PCTS physician performed an examination and noted that Mr. Sagon had "mild shortness of breath, mild edema of the ankles, [was] looking good, feeling better, appetite [was] good, and [he] desire[d] to go home." A chest x-ray and lab testing was also performed, and Mr. Sagon was discharged from the office visit with a prescription for Lasix, a water pill, to treat fluid retention and swelling.

On July 30, 2002, several days after his visit to the PCTS office, Mr. Sagon collapsed and was rushed to a local hospital, where he was diagnosed and treated for an acute pulmonary embolism. Mr. Sagon died from this condition a day later.

Sagon filed suit against PCTS, alleging that it was vicariously liable for its staff's deviation from the standard of care in their advice, assessment, diagnosis, and treatment of her husband.[1] According to Sagon, the PCTS physicians, nurses, and staff members failed to maintain complete medical records reflecting the Sagons' telephone calls and a prescription, failed to consult with their supervising physicians regarding Mr. Sagon's post-operative symptoms, failed to advise Mr. Sagon to seek appropriate medical attention, and failed to properly examine and treat Mr. Sagon's condition.

PCTS denied Sagon's claims of negligence and proximate causation. At trial, PCTS presented expert testimony asserting that the failure to maintain a record of the Sagons' telephone calls and Xanax

---

[1] Sagon's suit also listed a PCTS physician and unnamed staff members as defendants. Immediately prior to trial, however, Sagon dismissed her claims against these individual defendants and elected to proceed only against PCTS on the basis of vicarious liability.

prescription was not the proximate cause of Mr. Sagon's death. PCTS's witnesses and experts further testified that when Mr. Sagon was examined by the PCTS nurse and physician on the date of his last office visit, he did not present any symptoms indicating the existence of a blood clot, deep vein thrombosis (DVT) or acute pulmonary embolism,[2] such as unilateral swelling and pain in his nonoperative leg combined with shortness of breath. Instead, the medical records noted symptoms of mild shortness of breath and mild edema or swelling in both legs, which were said to be indicative of fluid retention, fatigue from the surgery, and/or anxiety. According to the experts, these symptoms were commonly experienced by patients after heart surgeries, whereas the risk of blood clots associated with DVT after heart surgery was rare. A PCTS expert opined that the PCTS medical staff members met the standard of care in their examination and treatment of Mr. Sagon based upon the evidence presented.

At the conclusion of the trial, the jury returned a verdict in favor of PCTS. Sagon now contends that she is entitled to a new trial since the trial court erroneously failed to charge the jury on the standard of care owed by the nurses and nonphysician office staff members.

"It is the settled general rule that a trial judge, whether requested in writing or not, should give to the jury appropriate instructions on every substantial, vital, and controlling issue presented by the pleadings and evidence." (Citations and punctuation omitted.) *Flatauer v. Goodman*, 84 Ga. App. 881, 885 (3) (67 SE2d 794) (1951). Upon review, "jury instructions must be read and considered as a whole in determining whether the charge contained error. Challenged segments cannot be considered in isolation to ascertain whether the charge is accurate and fair and worked no prejudice to the complaining party." (Citations and punctuation omitted.) *Dent v. Mem. Hosp. of Adel*, 227 Ga. App. 801, 805 (1) (490 SE2d 509) (1997), rev'd on other grounds, 270 Ga. 316 (509 SE2d 908) (1998).

In this case, Sagon pursued a legal theory that PCTS was vicariously liable for its staff members' professional negligence. Significantly, the trial court gave Sagon's requested jury instruction on the standard of care that applied to the professional negligence claims by reciting it practically verbatim as follows:

> A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of the profession a reasonable degree of care and

---

[2] DVT, leading to acute pulmonary embolism, is a condition involving blood clotting in the deep venous system of the body.

skill. Any injury resulting from a want of such care and skill shall be an act for which a recovery may be had. This standard when applied to the facts and circumstances of any particular case must be of such degree of care and skill as under similar conditions and like surrounding circumstances is ordinarily employed by the profession generally.

The court's instruction set forth a proper recitation of the law on the standard of care that applied to both the physicians and the nurses as professional health care providers. See *Beach v. Lipham*, 276 Ga. 302, 305 (2) (578 SE2d 402) (2003); *Grady Gen. Hosp. v. King*, 288 Ga. App. 101, 102-103 (653 SE2d 367) (2007); *Simpson v. Dickson*, 167 Ga. App. 344, 346-347 (1) (306 SE2d 404) (1983).

Although the trial court's instructions detailed above did not specify the term "nurse" in setting forth the standard, the instructions encompassed nurses by setting forth its application to "[a] person professing to practice . . . the administering of medicine for compensation[.]" See OCGA § 43-26-3 (6) (defining the practice of nursing as "the performance for compensation of any act in the care and counsel of the ill, injured, or infirm"). The trial court further instructed the jury on the parties' stipulation that the nurses were members of the practice and were employees acting within the scope of their employment with PCTS; instructed that the PCTS practice "shall be liable for the wrongful conduct or torts committed by an employee"; and instructed that "if the evidence shows that the Defendants and their agents and employees were not negligent[,] then it would be [the jury's] duty to return a verdict in favor of the Defendants[.]"[3] These instructions addressed the legal ramifications for PCTS if its nurses were found to be negligent and made it clear that the jury was to determine the issue of whether the PCTS nurses had been negligent as alleged in Sagon's claims. When viewed in their entirety, the trial court's jury instructions gave a full and correct statement of the law regarding the standard of care that applied to all of the professional health care providers and were not

---

[3] We also discern no merit in Sagon's argument that the trial court's jury instructions were internally inconsistent and confusing by referring to the "Defendant[ ] or [its] agents or employees" and the "Defendant[ ] and [its] agents and employees" using both conjunctive and disjunctive terms. The trial court's instructions set forth the parties' stipulation that identified the individuals who worked for PCTS as either agents or employees. The challenged instructions served to explain the principle that the jury would be required to enter a verdict in favor of PCTS if the jury found that those individuals had not acted negligently. In this context, the terms "Defendant[ ]," "agents," and "employees" were synonymous and the manner of connecting the terms in the conjunctive or disjunctive did not contain an irreconcilable conflict. See, e.g., *Williams v. Young*, 105 Ga. App. 391, 406-407 (6) (124 SE2d 795) (1962) (concluding that the use of synonymous words interchangeably and the use of the disjunctive "or" rather than the conjunctive "and" to connect the term was not improper).

confusing in defining the professional negligence issue. See *West v. Breast Care Specialists*, 290 Ga. App. 521, 522 (1) (659 SE2d 895) (2008).

In addition to the professional negligence claims, Sagon's allegations presented claims of ordinary negligence.[4] The general duty of care applicable to ordinary negligence claims differs from the standard of care peculiar to a professional.[5] See *Canas v. Al-Jabi*, 282 Ga. App. 764, 788 (2) (a) (639 SE2d 494) (2006), rev'd on other grounds, *Kaminer v. Canas*, 282 Ga. 830 (653 SE2d 691) (2007). But, at trial, Sagon's counsel withdrew the jury instruction on the ordinary negligence claim, and thereby indicated an election to proceed only on the professional negligence claims. As such, there was no error in the failure to give an instruction on ordinary negligence. Moreover, Sagon cannot now complain of any error that was induced by her trial counsel's actions. See *Moody v. Dykes*, 269 Ga. 217, 219-220 (3) (496 SE2d 907) (1998); *Thomas v. State*, 245 Ga. 688, 692-693 (6) (266 SE2d 499) (1980). See also *Brown v. State*, 71 Ga. App. 522, 523 (31 SE2d 85) (1944) ("A party can not complain of the court's failure to charge upon a particular theory, when his counsel, in response to a question addressed to him by the court, stated that he did not desire an instruction on such theory.") (citations omitted). Compare *Pearson v. Tippmann Pneumatics*, 281 Ga. 740, 742-743 (1) (642 SE2d 691) (2007). "It is always the duty of counsel, as officers of the court, to aid the trial judge in presenting the issues to the jury, and it should never be their purpose to mislead the judge in any statement made in regard to the issues involved in the case, or the law." *Irvin v. Oliver*, 223 Ga. 193, 196 (2) (154 SE2d 217) (1967). Under these circumstances, the failure to give an instruction on

---

[4] "[A] professional negligence claim calls into question the conduct of the professional in his area of expertise. Administrative, clerical, or routine acts demanding no special expertise fall into the realm of [ordinary] negligence." (Citation and punctuation omitted.) *Burke v. Paul*, 289 Ga. App. 826, 828 (658 SE2d 430) (2008). Sagon's allegations regarding the failure to properly advise, examine, diagnose, and treat Mr. Sagon's condition presented professional negligence claims that only applied to PCTS's physicians and nursing staff. See *James v. Hosp. Auth. of the City of Bainbridge*, 278 Ga. App. 657, 659 (1) (629 SE2d 472) (2006); *Greene County Hosp. Auth. v. Turner*, 205 Ga. App. 213, 214 (421 SE2d 715) (1992) (explaining that professional malpractice claims only apply to medical staff members who are professionals). Sagon's allegations regarding the administrative failure to maintain a record of the telephone calls and Xanax prescription presented ordinary negligence claims. See, e.g., *Butler v. South Fulton Med. Center*, 215 Ga. App. 809, 812 (2) (452 SE2d 768) (1994) (verification that a form has been properly executed and is part of the patient's records is an administrative task).

[5] Ordinary negligence "is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances." OCGA § 51-1-2. Contrary to Sagon's arguments, PCTS's secretaries did not have the same standard of care as physicians and nurses. See *Canas v. Al-Jabi*, 282 Ga. App. 764, 788 (2) (a) (639 SE2d 494) (2006), rev'd on other grounds, *Kaminer v. Canas*, 282 Ga. 830 (653 SE2d 691) (2007); *Greene County Hosp. Auth.*, 205 Ga. App. at 214.

ordinary negligence affords no basis for reversal. See id.

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED MARCH 25, 2009 —
RECONSIDERATION DENIED APRIL 8, 2009.

*Steven K. Leibel*, for appellants.

*Hall, Booth, Smith & Slover, Shaun Daugherty, Terrell W. Benton III, Kevin A. Leipow*, for appellee.