**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

December 19, 2012

# In the Court of Appeals of Georgia

A12A1826. TOUCHSTONE v. THE STATE.

ADAMS, Judge.

Dennis Touchstone was convicted by a jury of burglary, aggravated assault on a police officer, obstruction of a law enforcement officer and possession of a weapon during the commission of a crime. He appeals following the denial of his motion for new trial, contending that the trial court gave an inadequate response to a question from the jury, that his trial counsel was ineffective because he did not object to the trial court's inadequate response, and that the evidence was insufficient to convict him of aggravated assault and possession of a weapon during the commission of a

crime.[1] We agree with Touchstone that the evidence was insufficient, and that his convictions of those crimes must be reversed.

1. The record and transcript show the following facts which are pertinent to the resolution of Touchstone's challenge to the sufficiency of the evidence: On April 13, 2010, Dvore Bray called police to report an apparent burglary in progress in his neighborhood and gave police a description of the car the alleged perpetrators were driving. A short time later, Sergeant Kevin T. Hughes of the Clayton County Police Department saw a car matching the description Bray had provided and started following the car. Another officer in the area, Tunisha Billups, heard a call go out that Hughes was following the car that had been described in the burglary dispatch and fell in behind Hughes.

Hughes initiated a stop of the vehicle and the vehicle pulled into a gas station. The passenger, who was subsequently identified as Touchstone, jumped out of the car and "immediately" began running away. Hughes detained the driver, and Billups pursued Touchstone. Although Billups identified herself as a police officer and commanded Touchstone to stop, he never paused and continued to run toward a

---

[1] Touchstone does not challenge the sufficiency of the evidence to support his convictions for burglary and obstruction.

2

nearby wood-line. Billups continued to pursue Touchstone, but lost sight of him when she slipped and fell and he turned left into the wood-line. Billups started to pull herself up from the ground, but heard what sounded like a gunshot and immediately dropped back to the ground because she was in an open area and could not see Touchstone. Billups, fearing for her life, discontinued the chase.[2]

Other officers who had arrived at the scene of the stop had spread out around the perimeter, and one of those officers, Robert Gardner, observed Touchstone come out of the "creek wood-line area." Gardner identified himself and instructed Touchstone to get on the ground, whereupon Touchstone turned and ran back toward the wood-line. Gardner pursued Touchstone, and Touchstone gave up when it became apparent that Gardner had the advantage.

Gardner located a gun in the area, although it was not where Touchstone told the officers he had thrown it. Gardner identified the gun as a Smith and Wesson revolver, and a subsequent examination of the gun revealed it had been fired once.

The State also introduced evidence that Touchstone was out on bond on another crime, and that he made statements that he intended to run from police.

---

[2] Hughes, who was the supervising officer at the scene, also instructed Billups to call off the chase for officer safety reasons.

Touchstone also told police that he knew he was going to get caught and go to jail, and that the gun fired accidentally when he was taking it out of his pants pocket to dispose of it. But Officer Gardner testified that revolvers require a lot of "trigger pull" to discharge, and that it would be difficult to accidentally fire the gun while pulling it out of your pocket since you would be pulling the gun in the opposite direction of the trigger pull.

Based on the foregoing, Touchstone was charged with aggravated assault and possession of a firearm during the aggravated assault. In Georgia, "[a] person commits the offense of aggravated assault when he or she assaults: (1) [w]ith intent to murder, to rape, or to rob; (2) [w]ith a deadly weapon . . . ." OCGA § 16-5-21 (a). Our law further provides that simple assault may be committed in one of two ways: by an attempt to commit a violent injury to the person of another, OCGA § 16-5-20 (a) (1), or by commission of an act which places another in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20 (a) (2).

Touchstone was indicted for "knowingly mak[ing] an assault upon the person of Tunisha Billups, a peace officer engaged in the performance of her official duties, with a deadly weapon, to wit: a .357 caliber revolver," and thus on its face the indictment was broad enough to authorize Touchstone's conviction of aggravated

4

assault based on either OCGA § 16-5-20 (a) (1) or (a) (2), provided it was shown that he committed the assault with a gun.[3] *Chase v. State*, 277 Ga. 636, 638 (1) (592 SE2d 636) (2004). However, the trial court's charge included an instruction only on attempt to commit a violent injury;[4] nowhere in its instructions did the court charge that Touchstone could be found guilty of assault by placing Billups in reasonable apprehension of receiving a violent injury. Thus, although the indictment and governing law may have authorized the jury to convict Touchstone based on either OCGA § 16-5-20 (a) (1) or OCGA § 16-5-20 (a) (2), we agree with Touchstone that, pursuant to the trial court's instructions, the jury was authorized to convict him of aggravated assault only if it was established beyond a reasonable doubt that he attempted to commit a violent injury to Billups.

Further, we agree with Touchstone that the circumstantial evidence, which primarily consisted of Billups' testimony that she lost sight of Touchstone, heard a

---

[3] There is no question here that the aggravated assault, if any, was committed by the use of a handgun.

[4] The court charged as follows: "A person commits the offense of aggravated assault when that person assaults another person with a deadly weapon. To constitute an assault actual injury to the alleged victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim." This was a correct statement of the law that would have authorized Touchstone's conviction under OCGA § 16-5-20 (a) (1).

gunshot and fell to the ground because she feared for her life, was insufficient to establish that the shot was fired with the intent to cause her actual physical injury. Touchstone was out of the officer's view when he fired the gun,[5] no other officer or witness saw him fire the gun, no witness saw where he aimed the gun when he fired it, and no forensic or other evidence was introduced which suggested that he fired the gun in Billups' direction. In sum, there is no evidence here that Touchstone intentionally fired the gun *at* Billups, intending to inflict a violent injury to her person. Cf. *Chase v. State*, 277 Ga. at 638 (1) (evidence sufficient to show that defendant knew victim was in small kitchen in the townhome and intentionally fired gun at her through the upstairs flooring); *Nyane v. State,* 306 Ga. App. 591 (703 SE2d 53) (2010) (shots fired in the victim's direction which hit him was sufficient to support conviction for aggravated assault).

The State counters that because the jury obviously rejected Touchstone's defense that he discharged the gun by accident, his conviction for aggravated assault was authorized. However, even if the jury's verdict necessarily indicates that the jury found incredible Touchstone's statements to police that the gun discharged accidentally, we do not believe that it follows, under the facts of this case, that "the

_____

[5] Obviously there is no dispute here that it was Touchstone who fired the gun.

jury was entitled to take his untruthfulness as substantive and affirmative evidence of his guilt [of aggravated assault under OCGA § 16-5-20 (a) (1) as charged by the trial court]." *Ferguson v. State*, 307 Ga. App. 232, 235 (1) (704 SE 2d 470) (2010) (jury could consider perjured testimony as affirmative evidence of guilt). Even if the jury concluded that the shot was fired deliberately, there is simply nothing to show that Touchstone intended to commit a violent injury to Billups by firing the shot.

Further, there are clear indications that the jury may have been confused by other parts of the charge and that the unsupportable verdict in this case may have stemmed in part from that confusion. Although "aggravated assault with a deadly weapon based on OCGA § 16-5-20 (a) (1) cannot be committed by criminal negligence," *Dunagan v. State*, 269 Ga. 590, 591 (2) (a) (502 SE2d 726) (1998), the trial court's charge contained several references to criminal negligence, and the jury was informed several times that they could find Touchstone guilty of a "crime" if he acted with intent *or* criminal negligence.[6] And clearly the jury was confused about the intent element of the crime, as demonstrated by questions they posed while they were deliberating. The jury first asked the court to "define aggravated assault, layman's

---

[6] The trial court instructed the jury that "[c]riminal negligence is an act which demonstrates a wilful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby."

7

term of aggravated assault, example, if gun was fired intentionally but without intent to harm officer is that aggravated assault on a peace officer, i.e., firing a warning shot." The trial court did not directly respond to the question, but instead referred the jury back to its original final instructions, and provided the jurors with a copy of those instructions. The jury continued to deliberate, at one point asking the court if they could test the "trigger pull" on the revolver. The trial court denied this request, and the jury subsequently indicated to the court that it remained deadlocked on the aggravated assault charge, commenting that the "[m]ain issue appears to be the following, is intent to harm required for aggravated assault. Can defendant be found guilty on aggravated assault if discharge was unintentional." The trial court once again referred the jury back to the charge and reminded the jurors that they had been given a copy of the charge. Thus, as Touchstone observes, "[e]ven though the trial court charged [the jury that intent to injure was required for] aggravated assault, [it appears] the jury was still unable to glean the intent requirement from the charge [as a whole] because of the confusion caused by . . . the criminal negligence language throughout the charge."

The evidence here was insufficient to convict Touchstone of the offense of aggravated assault under OCGA § 16-5-20 (a) (1), and his conviction for that offense must be reversed.

Further, we agree with Touchstone that his conviction for possession of a firearm in the commission of a felony based on the underlying felony of aggravated assault must also be reversed. *Flores v. State*, 308 Ga. App. 368, 372 (4) (707 SE2d 578) (2011); *Elrod v. State*, 238 Ga. App. 80, 83-84 (2) (517 SE2d 805) (1999).

2. Because of our holding in Division 1, it is unnecessary for us to consider Touchstone's remaining enumerations in which he contends that the trial court gave an inadequate response to the jury's questions about intent and that his trial counsel was ineffective because he did not request a more complete response and did not object to the manner in which the trial court responded to the jury's questions.

*Judgment reversed. Barnes, P. J., and McFadden, J., concur.*