**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**February 8, 2021**

# In the Court of Appeals of Georgia

A20A2018. SCHMEELK v. THE STATE.

BROWN, Judge.

A jury found Gregory Schmeelk guilty of family-violence aggravated assault and reckless conduct.[1] Schmeelk appeals his convictions and the denial of his amended motion for new trial, contending that insufficient evidence supports his conviction for family-violence aggravated assault and that the trial court failed to exercise its discretion to act as the "thirteenth juror." We conclude that the State presented sufficient evidence to support the conviction but nonetheless vacate the

---

[1] Schmeelk was charged with two counts of family-violence aggravated assault but was convicted of the lesser included offense of reckless conduct as to one count (Count 2). The jury found him not guilty of terroristic threats, and the State nolle prossed one count of cruelty to children in the third degree.

trial court's order denying Schmeelk's motion for new trial and remand the case so that the court may exercise its discretion as the "thirteenth juror."

Viewed in the light most favorable to the jury's verdict, see *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that Schmeelk lived in a house with his wife, their young daughter, and the wife's 23-year-old daughter at the time of the incident. On the night of March 25, 2016, Schmeelk's stepdaughter returned home from church and went to her room in the downstairs basement of the home to eat dinner. She heard loud noises upstairs, and her mother came down to the basement to tell her that Schmeelk was drunk and that she was "trying to convince him to . . . pass out." The daughter walked partially up the stairs and saw Schmeelk on the couch in his underwear. Schmeelk walked to his bedroom with the mother in tow, and the daughter heard the mother tell Schmeelk, "No . . . not tonight. It's not funny. No. . . ." The daughter went to help her mother and saw Schmeelk grabbing her by the arms to try to lead her into the bedroom. The daughter instructed Schmeelk to let go of her mom and go to bed. As Schmeelk walked toward the daughter, she pulled out her cell phone and threatened to call the police. In response, he returned to the bedroom.

As the daughter walked back down the stairs, she heard the "sound of . . . a gun being racked," and her mother saying "run, run, run." The daughter ran down the stairs past the locked front door, locked the basement door behind her, exited the basement door into the garage, and locked that door behind her. She then opened the garage door, ran down the driveway between the parked cars, and crouched behind Schmeelk's car. At this point, the daughter heard gunshots and fled to a tree in the yard. As she hid behind the tree, she saw Schmeelk reach the end of the driveway, holding the gun, and look up and down the street. The mother told Schmeelk, "You're not going to find her, Greg. Stop looking. She's already gone." The daughter ran down the street to a neighbor's house, screaming for help, and called the police.

The mother's testimony corroborated the daughter's version of events. She testified that Schmeelk came out of their bedroom with a gun, went down the stairs past the front door and to the daughter's room where he kicked in the locked door. The mother followed him, grabbing his shirt and telling her daughter to run. When they reached the garage, she heard multiple shots fired. Schmeelk then turned the gun on the mother and told her, "If you don't let go of my shirt, I'll shoot you, too." Schmeelk then walked to the end of the driveway with the gun.

A neighbor heard gunshots and a woman screaming and went to help. He encountered Schmeelk with a gun in his driveway and asked him to put down the gun. Schmeelk complied, and the man collected the gun before police arrived. The responding officer testified that she observed several bullet holes in the front of Schmeelk's silver Jetta in the driveway, along with a bullet hole off to the side of the car in some pine straw.

At trial, Schmeelk testified in his own defense. He admitted having "a couple of drinks" on top of medication he took after having a back procedure earlier in the day. According to Schmeelk, he was "feeling . . . despondent and under appreciated and disrespected and was overwhelmed with work," decided that he was no longer going to work, and accordingly shot the engine in his car. He denied knowing that his stepdaughter was outside when he was shooting, and denied threatening or intentionally pointing the gun at the wife. He also denied breaking down the basement door, claiming his and the mother's "combined body weight burst the door open."

1. Schmeelk contends that insufficient evidence supports his conviction for family-violence aggravated assault. Specifically, he contends that no evidence was presented from which a jury could infer that he had any motive to harm or injure his stepdaughter or knowingly intended to make an assault upon her. We disagree.

4

Pertinently, a person commits aggravated assault when he assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" OCGA § 16-5-21 (a) (2). See also OCGA § 16-5-21 (i) (explaining the sentencing enhancement if the aggravated assault is committed between, inter alia, stepparents and stepchildren). It is well established "that aggravated assault has two elements: (1) commission of a simple assault as defined by OCGA § 16-5-20 (a); and (2) the presence of one of three statutory aggravators set forth in OCGA § 16-5-21 (a)." (Citation and punctuation omitted.) *Johnson v. State*, 348 Ga. App. 540, 544 (1) (823 SE2d 853) (2019). "A person commits the offense of simple assault when he or she either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a).

Here, Count 1 of the indictment charged Schmeelk with family-violence aggravated assault in that Schmeelk "did knowingly make an assault upon the person of [his stepdaughter] with a deadly weapon, to wit: a Colt handgun by firing said handgun at [the stepdaughter] multiple times. . . ." Thus, the indictment was broad enough to authorize Schmeelk's conviction of aggravated assault based on either

5

OCGA § 16-5-20 (a) (1) or (a) (2). See *Touchstone v. State*, 319 Ga. App. 477, 479 (1) (735 SE2d 805) (2012) (indictment charging the defendant with "'knowingly making an assault upon [the victim], a peace officer engaged in the performance of her official duties, with a deadly weapon, to wit: a .357 caliber revolver'" was broad enough to authorize the defendant's aggravated assault conviction based on either type of simple assault). See also *Ford-Calhoun v. State*, 327 Ga. App. 835, 839 (1) (a) (ii), n.14 (761 SE2d 388) (2014) ("an indictment for aggravated assault puts a defendant on notice that he may be convicted for aggravated assault if he committed a simple assault in either manner contained in the simple assault statute, so long as the trial court charges and the State proves that he did so by the alleged aggravating aspect of the assault") (citation and punctuation omitted).[2]

The testimony of the victim and the mother established that after the victim confronted Schmeelk and threatened to call the police, Schmeelk obtained a loaded gun from his bedroom, followed the victim down the stairs past the front door, and busted down the basement door to the victim's room before firing the gun at the car behind which the victim was hiding. The evidence also showed that Schmeelk

---

[2] In its charge to the jury, the trial court defined both methods of committing simple assault.

6

threatened to shoot the mother "too" if she did not get out of his way, and that after shooting his car, Schmeelk walked to the end of the driveway with the gun to look up and down the road. The victim also testified that she knew Schmeelk was shooting at her, was afraid, and "r[a]n for [her] life." We conclude that this was sufficient evidence to sustain Schmeelk's aggravated assault conviction based upon either form of simple assault. See *Howard v. State*, 288 Ga. 741, 742 (1) (707 SE2d 80) (2011) ("[t]estimony that the victims ran from the gunfire is sufficient evidence that Appellants placed them in reasonable apprehension of immediately receiving a violent injury"); *Lomax v. State*, 319 Ga. App. 693, 694 (1) (738 SE2d 152) (2013) (victim's testimony that defendant had a gun and that when victim turned and ran he heard a gunshot and discovered that he had been shot sufficient to sustain defendant's aggravated assault conviction). See also *Chase v. State*, 277 Ga. 636, 637-638 (1) (592 SE2d 656) (2004) (evidence that defendant could "'keep tabs'" on where victim was in the townhome because of how sound traveled "constituted sufficient evidence to authorize the jury to conclude that [defendant] knew where the victim was in the small kitchen and intentionally fired his gun at the victim through the upstairs flooring just above the site she was occupying in the kitchen, intending to inflict violent injury upon the victim"). Although Schmeelk testified that he did not know

7

the stepdaughter was present when he shot the gun, the jury was authorized to disbelieve his testimony. See *Jordan v. State*, 344 Ga. App. 267, 271 (3) (810 SE2d 158) (2018). "Indeed, it is the jury's role to resolve conflicts in the evidence and determine the credibility of witnesses, and the presence of such conflicts does not render the evidence insufficient." (Citation and punctuation omitted.) *Gathers v. State*, 355 Ga. App. 761, 763 (1) (844 SE2d 882) (2020).

2. Schmeelk next contends that the trial court erred by failing to consider his amended motion for new trial on the "general grounds." Specifically, he contends that nothing in the court's order reflects that it evaluated the credibility of the witnesses and weighed the evidence in deciding whether to exercise its discretion to grant a new trial in its role as the "thirteenth juror." See OCGA §§ 5-5-20 and 5-5-21. We agree.

Here, Schmeelk explicitly argued in his motion for new trial and amended motion that the jury's verdict was contrary to the principles of justice and equity and was strongly against the weight of the evidence. The order denying Schmeelk's amended motion for new trial pertinently states as follows:

> In his Amended Motion for New Trial . . . Defendant argues that there was insufficient evidence of his intent to cause injury and that the verdict went against the weight of the evidence.

8

> The Court finds that there was sufficient evidence before the jury to find intent to commit the acts charged. Accordingly, it is hereby ORDERED that Defendant's Amended Motion for New Trial is DENIED.

We presume, "in the absence of affirmative evidence to the contrary, that the trial court properly exercised its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21." *Holmes v. State*, 306 Ga. 524, 528 (2) (832 SE2d 392) (2019). "However, when the record reflects that the trial court reviewed the motion for new trial only for legal sufficiency of the evidence, the trial court has failed to exercise such discretion." Id. Accord *Gresham v. State*, 354 Ga. App. 835, 838 (1) (841 SE2d 484) (2020). Here, as in *Holmes*, aside from mentioning that Schmeelk made this argument, "[t]he order made no reference to the general grounds, gave no indication that the trial court had considered or reweighed the evidence presented at trial, and did not suggest that the trial court had exercised its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21." 306 Ga. at 528 (2). Compare *Price v. State*, 305 Ga. 608, 613 (3) (825 SE2d 178) (2019) ("when a trial court enters an order denying a motion for new trial and, without more, recites that the new trial is refused or denied, this will be taken to mean that the judge has in the exercise of his discretion approved the verdict") (citation and punctuation omitted). Accordingly, we vacate the trial court's order denying Schmeelk's amended

9

motion for new trial and remand the case so that the trial court may exercise its discretion as the "thirteenth juror" and, in so doing, reweigh the evidence presented at trial. See *Gresham*, 354 Ga. App. at 838-840 (1) (where trial court noted in its order that defendant asserted the "'standard grounds'" in his motion for new trial, but nothing in order indicated that court had performed its duty to exercise its discretion as "thirteenth juror," order must be vacated and case remanded for court to apply proper standard and exercise its discretion).

*Judgment vacated and case remanded with direction. Dillard, P. J., and Rickman, P. J., concur*.